## WESTINGHOUSE ELECTRIC & MANUFACTURING CO. v. TRIUMPH ELECTRIC CO.

(Circuit Court of Appeals, Sixth Circuit. October 3, 1899.)

### No. 664.

1. DESIGN PATENTS—CONSTRUCTION OF STATUTE—PATENTABILITY.

The purpose of congress in authorizing the granting of patents for designs is to give encouragement to the decorative arts, and in the provision of Rev. St. § 4929, which authorizes the issuance of a patent to any person who has invented and produced "any new, useful and original shape or configuration of any article of manufacture," the word "useful," which was introduced by the revision of 1870, does not require that the shape or configuration of an article, in order to be patentable, shall add some new utility to the article, but is used merely to exclude such things as might have a vicious or corrupting tendency, and a new and original design for an article may be patentable where it merely improves its appearance.

2. SAME—FRAME FOR ELECTRIC MACHINES.

The Schmid design patent, No. 21,416, for a design of a configuration of a frame for electric machines, the only originality claimed for which is the curvature of the bases of the pillars for supporting the shaft, and of the supports to the cylinder frame for the field, does not disclose patentable invention, and is void.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

This is an appeal from a decree of the circuit court dismissing the bill of the Westinghouse Electric & Manufacturing Company against

the Triumph Electric Company, seeking to enjoin the alleged infringement of a design patent (No. 21,416) issued March 22, 1892, to Albert Schmid, and assigned by Schmid to the complainant. The patent was for a design of a new and useful configuration of a frame for electric machines. The frame is seen in Figs. 1 and 2 of the patent:

Fig.1.

Fig.2.

The patent says:

"The leading feature of the design is the general configuration of the frame with the extensions which constitute the supporting pillars for a shaft. A represents this frame. The bottom portion is of a somewhat rectangular shape, being rounded, however, at the corners, as indicated at a. The central portion is cylindrical in form. It is located nearer to one end of the base than the other, and its sides, resting upon the base, are curved, as indicated at a$^s$. The pillars, a$^2$, rise from the bottom portion or base at opposite ends. The sides of these pillars are of curved contour, as shown at c, gradually sinking to the base, and joining or nearly joining the curves of the adjacent edges of the cylindrical portion, thus giving a pleasing appearance to the structure. Owing to the greater distance of the cylindrical portion from one end of the base than the other, the curves will unite less acutely at one end than at the other. What I claim as my invention is the design for the frame of a machine substantially as herein shown and described."

Wesley G. Carr, for appellant.
L. M. Hosea, for appellee.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge (after stating the facts). Section 4929 of the Revised Statutes provides that:

"Any person who by his own industry, genius, efforts and expense, has invented and produced (1) any new and original design for a manufacture, bust, statue, alto-relievo or bas relief; (2) any new and original design for the printing of woolen, silk, cotton or other fabrics; (3) any new and original impression, ornament, pattern, print or picture to be printed, painted, cast or otherwise placed on or worked into any article of manufacture; (4) or any new, useful and original shape or configuration of any article of manufacture, the same not having been known or used by others before his invention or production thereof, or patented or described in any printed publication, may, upon payment of the fee prescribed and other due proceedings had, the same as in cases of invention or discoveries, obtain a patent therefor."

Of this statute the supreme court says, speaking by the chief justice, in the case of Smith v. Saddle Co., 148 U. S. 674–678, 13 Sup. Ct. 768, 769:

"The first three of these classes plainly refer to ornament or to ornament and utility, and the last to new shapes or forms of manufactured articles; and it is under the latter clause that this patent was granted."

The same is true of the patent in suit, and the question is whether that which is here claimed to be a patented configuration is new, useful, and original, and is the shape or configuration of an article of manufacture. The court below held that the term "useful," which was introduced into the statute by the amendment of 1870, required that the shape or configuration should embrace some new utility, and that, as the patent in suit was conceded not to involve any utility different from that presented in other and previous machine frames, the patent was void. We should think it very doubtful whether the word "useful," introduced by revision of the patent laws into the statute, is to have the same meaning as it has in the section providing for patents for useful inventions. The whole purpose of congress, as pointed out by Mr. Justice Strong, speaking for the supreme court, in the case of Gorham Co. v. White, 14 Wall. 511, was to give encouragement to the decorative arts. It contemplated not so much utility as appearance. "The law manifestly contemplates

that giving certain new and original appearances to a manufactured article may enhance its salable value, may enlarge the demand for it, and may be a meritorious service to the public. * * * It is the appearance itself which attracts attention and calls out favor or dislike. It is the appearance itself, therefore, no matter by what agency caused, that constitutes mainly, if not entirely, the contribution to the public which the law deems worthy of recompense." This decision was rendered at a time when the statute of 1861 was in force. By that statute a design patent was provided for "any new and original shape or configuration of any article of manufacture." The word "useful" did not appear in this phrase. It did, however, appear in another part of the same section, to wit, "any new and useful pattern, or print, to be either worked into or worked on, or printed, or painted, or cast, or otherwise fixed on any article of manufacture." By the act of 1870, which was a revision as well as amendment of the patent laws, the word "useful" was transferred from the office of qualifying patterns and prints to that of qualifying shapes or configurations of matter. 12 Stat. 246. We cannot infer from the transfer of a single word from one phrase to another, where both are in pari materia, that thereby, as to one of the classes of designs protected by the statute, the whole purpose of congress, as pointed out by the supreme court, was changed. We must infer that the term "useful" was inserted merely, out of abundant caution, to indicate that things which were vicious and had a tendency to corrupt, and in this sense were not useful, were not to be covered by the statute. As already said, the statute is a revision, and the presumption of the legislative intention to change the meaning by a change of language is by no means so strong as when the sole object of the statute is to amend. We concur in the opinion of Mr. Commissioner Hall in Ex parte Schulze-Berge, 42 O. G. 293, in which he says:

"There can be no doubt that an invention, to be the subject of a mechanical patent, must possess utility or usefulness; but it is a usefulness which relates to mechanics,—the modification or control of physical forces. On the other hand, the subject of a design patent may also be useful in an entirely different sense or direction, and I think the word 'useful,' in the statute (section 4929, Rev. St.), is employed in a different sense. The subject of invention, so far as form or shape or configuration is concerned, must be useful in the sense that it tends to promote pleasure, refinement, comfort, depending upon the sense of the beautiful. It must be useful in the sense that it must not be mischievous, obscene, or tending to produce evil or wicked reflections. Invention in this field of art relates to the intangible, and its power consists in its ability to awaken pleasant and agreeable sensations, conceptions, and thoughts, and the usefulness involved is that which brings about these results."

See, also, Ex parte Norton, 22 O. G. 1205; Kraus v. Fitzpatrick, 34 Fed. 39.

It is further objected by the appellee that the frame of the electric machine is not an article of manufacture, within the meaning of the statute above quoted, and that a design patent cannot be granted for the configuration of what is part of a machine, rather than an article of manufacture, within the meaning of the law. The question is not free from difficulty, and we do not find it necessary to consider it. Assuming that a frame for an electric machine might be made the subject of a design patent, we are clearly of opinion that

the frame here patented was not new or original, in view of the existing state of the art.

It is conceded on behalf of the appellant that the physical and mechanical necessities of the electric machine, of which the subject-matter of this patent was to form the frame, required a cylindrical frame in which should be the field of the multipolar dynamo, and in which the armature must revolve, and that there must be pillars at each side of this cylinder to support the axis or shaft of the armature. It is also conceded that it was a necessary mechanical arrangement that the field and revolving armature should be nearer to one of the supports than the other.    Many forms of the frame of the electric machine have been introduced in evidence by model and drawing, and in each we find the pillars and cylindrical frame between; and the only distinction which counsel for complainant has been able to point out between the patented design and previous forms is in the curvature of the base of the pillars, and of the bases of the supports to the cylinder frame for the field.    In the patented design the bases of the pillars and of the cylinder are curved so as to make them almost continuous from the cylinder to the pillar.    In the Elwell Parker machine frame we find the curve at the base of the pillars, but with only a very slight curve, if any, at the base of the cylindrical frame.    In the Alioth machine we find curved bases to the pillars, with a curved web connecting one pillar with the cylinder, while the other pillar, though curved to the base, is not directly connected with the cylinder.    As pointed out by counsel for the defendant, and as admitted by the witnesses for the complainant, the insertion of a small curved fillet at the base of the cylinder on each side would destroy all material difference in appearance between the patented design and the Elwell Parker frame.    It is further shown by the evidence that curves like this at the base of a standard or pillar are of the commonest use, and are at once suggested to the practical builder of such a machine, by the fact that they render the casting of them much easier and more certain of success.    In general appearance the Alioth and the Elwell Parker machine are very like the patented design.    The difference in the curve at the bottom is one which would suggest itself to any workman, and does not involve that exercise of the inventive genius which is as necessary to support a design patent as a mechanical patent.    Smith v. Saddle Co., 148 U. S. 674–679, 13 Sup. Ct. 768; Northrup v. Adams, 2 Ban. & A. 567, Fed. Cas. No. 10,328; Foster v. Crossin, 44 Fed. 62.    For this reason, and without considering the other interesting questions presented in full in the briefs of counsel, we affirm the decree of the circuit court, at the costs of the appellant.