### ROWE v. BLODGETT & CLAPP CO.

(Circuit Court of Appeals, Second Circuit. November 14, 1901.)

#### No. 19.

1. PATENTS—DESIGNS—LIMITATION AS TO SUBJECT OF PATENT.

Design patents refer to appearance, and not to mechanical utility, and are intended to apply only to matters of ornament, in which the utility depends on the pleasing effect imparted to the eye, and not to any new function. A calk for a horseshoe is not a proper subject for such a patent.

2. SAME—DESIGN AS TRADE-MARK.

The designer of an article of manufacture, not otherwise entitled to receive a design patent therefor, cannot sustain such a patent upon the theory that the design identifies the article as his, and in effect operates as a trade-mark.

3. SAME—HORSESHOE CALK.

The Rowe design patent, No. 26,587, for a design for a horseshoe calk, is void because the article is not an appropriate subject for a design patent.

Appeal from the Circuit Court of the United States for the District of Connecticut.

This cause comes here upon appeal from a decree of the circuit court, district of Connecticut, dismissing the bill. 103 Fed. 873. The suit is for infringement of United States design patent No. 26,587, granted February 2, 1897, to Allen H. Rowe for "design for a horseshoe calk." The design "consists in the configuration of the device as [therein] described. When viewed in side elevation, the calk is divided into a cylindrical threaded upper portion, with a distinct groove between this portion and the square base. Below the base the body portion tapers into the form substantially of a truncated cone.

On each side of the base its surface is oblong in general outline. Its lower boundary line, however, having a downward projecting curved part at about the center of the side."

H. E. Hart, for appellant.
L. P. Waldo Marvin, for appellee.

Before WALLACE and LACOMBE, Circuit Judges.

PER CURIAM. Several defenses were urged, but Judge Townsend at circuit held as follows:

"I decide this case upon the broader ground that patents for designs are intended to apply to matters of ornament, in which the utility depends upon the pleasing effect imparted to the eye, and not upon any new function. The advantage claimed by complainant for the increased flat surface afforded by the curved line, which is the essential feature of his patent, is to enhance the mechanical utility of the calk by thus making a stouter shoulder, which would not so readily become bruised out of shape, and which, therefore, could be more easily removed with a wrench, when worn, from the shoe. It is significant, in this connection, that the patentee first applied for this essential feature of downward projecting curved lines on the sides of the base, as a mechanical invention, which application was rejected, and that he then attempted to cover the same feature by a design patent. Design patents refer to appearance, not utility. Their object is to encourage works of art and decoration which appeal to the eye, to the æsthetic emotions, to the beautiful. A horseshoe calk is a mere bit of iron or steel, not intended for display, but for an obscure use, and adapted to be applied to the shoe of a horse for use in snow, ice, and mud. The question an examiner asks himself while investigating a device for a design patent is not 'What will it do?' but 'How does it look?' 'What new effect does it produce upon the eye?' The term 'useful,' in relation to designs, means adaptation to producing pleasant emotions. There must be 'originality and beauty. Mere mechanical skill is not sufficient.' Northrup v. Adams, 2 Ban. & A. 567, Fed. Cas. No. 10,328, approved in Smith v. Saddle Co., 148 U. S. 679, 13 Sup. Ct. 768, 37 L. Ed. 606; Ex parte Parkinson (1871) Dec. Com. Pat. 251."

We prefer to rest our affirmance on concurrence with these views. The practice of the patent office in issuing design patents seems not to have been uniform. Prior to 1871 it was "not only liberal, but lax," until, in a carefully considered opinion, Commissioner Leggett (Ex parte Parkinson [1871] Dec. Com. Pat. 251) conformed it to a construction of the law which subsequently found approval in the cases above cited. In another case, in 1873 (In re Seaman, 4 O. G. 691), the same commissioner indicated the test to be applied by examiners when an article of manufacture is presented with request for a design patent:

"Is its form, without reference to the function of the article, intended to be ornamental, and is the article itself a thing which may, for any practical purpose, have a merely ornamental configuration, and therefore have, in that sense, sufficient utility to warrant the grant of a patent?"

It would seem from the patent in suit that this test is no longer applied, and that the practice of the office has again become "not only liberal, but lax."

There is nothing in the record to indicate that there is anything attractive about the appearance of the complainant's calk, or that the downward projecting curved lines appeal in any way to the eye, or serve to commend the article to purchasers, except for

the suggestion that, seeing those lines, they will know the calk on which they appear is the product of the patentee, and not of some other maker. But the designers of articles of manufacture not otherwise entitled to receive design patents cannot justify the issuance of such patents on any theory that the design is a trademark.

The decree of the circuit court is affirmed, with costs.