### BRADLEY v. ECCLES (two cases).

#### (Circuit Court of Appeals, Second Circuit. November 18, 1903.)

#### Nos. 143, 144.

1. PATENTS—INVENTION—THILL-COUPLING.

   The Bradley patent, No. 609,928, for a thill-coupling, comprising a divided draft-eye, having spherical recesses in its jaws, and a spherical wrist or knuckle on the thill or pole iron, in combination with a leather packing, consisting of a single piece compressed into a spherical form, adapted to fit between the draft-eye and knuckle to prevent rattling, while entitled to only a narrow construction—the form of packing being the only novel feature of the combination—within such limitation was not anticipated, and shows invention.

2. SAME—DESIGNS—SUBJECTS PATENTABLE.

   A washer for thill-coupling, adapted to be used around the spherical knuckle of the thill-iron, as a packing between that and the draft-eye, where it is concealed from sight, cannot be made the subject of a design patent.

3. SAME—WASHER FOR THILL-COUPLERS.

   The Bradley design patent, No. 28,571, for a design for a washer for thill-couplers, is void, as covering an article which is not a proper subject of such a patent.

4. SAME—THILL-COUPLING.

   The Bradley design patent, No. 32,747, for a design for a draft-arm in a thill-coupling, is void for anticipation by the structure shown in a prior mechanical patent to the same patentee.

5. APPEAL—MOTION TO DISMISS.

   Whether or not a court erred in entering a certain decree is a question to be presented on a review of such decree, and cannot be raised on a motion to dismiss an appeal therefrom.

126 F.—60

Appeals from the Circuit Court of the United States for the Northern District of New York.

For opinions below, see 122 Fed. 867, 871.

The appeal in the first cause is from an interlocutory decree for injunction and accounting, sustaining the single claim of United States letters patent No. 609,928, August 30, 1898 (application September 28, 1897), to complainant, for an improvement in thill-couplings. The appeal in the second cause is from a similar interlocutory decree sustaining the validity, and finding infringement of two certain United States design patents, viz., No. 28,571, May 10, 1898 (application March 14, 1898), design for a washer for thill-couplings, and No. 32,747, May 29, 1900 (application April 30, 1900), design for a thill-coupling. Inasmuch as all three patents relate to the same coupling device, they may be most conveniently considered together.

W. A. Megrath, for appellant.
Howard P. Denison, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The mechanical patent (609,928), as the specification asserts, "relates to that class of thill-couplings which comprise a divided draft-eye on the vehicle, and a spherical wrist or knuckle on the thill or pole iron, which is adapted to be seated in the draft-eye. The object of the invention is to provide the coupling with a packing which effectually prevents rattling and is very durable."

The precise thing covered by the patent is most clearly indicated in one of the drawings, which is here reproduced:

Fig. 3 is a perspective view of the wrist of the thill-iron, with the improved packing applied thereto. It will be understood that the substantially spherical wrist or knuckle of the thill-iron is inserted in correspondingly shaped sockets or bearing surfaces formed in the draft-eye. This form of wrist permits the thill to rock somewhat in the draft-eye, and wear the parts uniformly. Such wrists and draft-eyes were old. Indeed they are found well illustrated in complainant's United States patent 485,856, of November 8, 1892, where it is stated that one object of making them in such form is to avoid rattling. In this patent of 1892 the wrist was provided with an opening or recess extending diametrically through the same, and filled with an absorbent plug of felt or similar material saturated with oil. "The oil held by the felt issues slowly from opposite ends of the opening and is fed between the wrist and the draft-eye sections, whereby these parts are

lubricated." It appears from the complainant's testimony that the devices of his 1892 patent did not secure a perfect noiseless coupling. He says further:

"The trade demands a thill-coupling which will not rattle, and one which will not rattle from continuous use. The best results have been obtained by constructing a thill-coupling in which there were two jaws, one fixed and the other movable, the interior faces of which are concaved, or constructed hemispherical, so that they may receive a spherical knuckle between such jaws. To use such a thill-coupling without a leather packing would require a constant oiling. As a matter of fact, if it were constantly oiled, it would continue to wear dry, so as to make its use noisy and cause it to squeak. I found it would be necessary to construct some kind .of a leather packing. First along I experienced great difficulty in retaining a packing within a thill-coupling, but after repeated experiments I devised a way * * * shown in Fig. 3 of the drawings of the patent in suit."

The specification thus describes the packing and its operation:

"I represents a spherical packing which surrounds the wrist, h, and is seated in corresponding cavities of the jaws of the draft-eye. This packing is made of a flat piece of hard oak leather, and bent and molded by pressure to the required spherical form, with the open joint, j, extending along one side, so that this split packing will retain its shape, but can be sprung over the wrist. The packing is constructed with truncated ends, which are arranged at right angles to the open joint at the ends thereof, and whereby the packing straddles the wrist of the thill-iron, while it entirely envelopes the spherical knuckle, and separates the same from the metallic surface of the surrounding spherical socket. The packing is preferably saturated with tallow. The packing being seated in the spherical recesses·of the jaws of the draft-eye, it is firmly clasped therein; and as the pressure of the jaws falls with greatest force upon the outer side of the packing, which is much larger in area and diameter than the inner side, the packing is rigidly held in the draft-eye, and is prevented from turning in the same while the wrist turns in the packing. In other words, the friction between the outer side of the spherical packing and the draft-eye is far greater than that between the inner side of the packing and the wrist, and the consequence is that the wrist turns in the packing, while the latter is held stationary in the draft-eye. The inner surface of the packing wears very smooth, and forms a very perfect bearing for the wrist to work in. By contriving the packing in this manner, the rattling of the thill-coupling is not only prevented, but the twisting or wringing of the packing in the draft-eye, which is so common and destructive in cylindrical packings, is entirely avoided, and the life of the packing greatly lengthened."

The claim reads:

"The combination with a draft-eye having spherical recesses in its jaws, and a draft-iron having a spherical knuckle, of an interposed spherical packing provided with an open longitudinal joint along its side, and with truncated ends at the ends of said joint, said packing enveloping the knuckle entirely, and separating the same from the spherical bearing surfaces of the surrounding draft-eye, substantially as set forth."

It is conceded by both sides that the only new element of the combination is the spherical packing, and it is apparent from the language of the claim that the patentee is confined to the precise form of packing therein set forth. That is a hard leather packing—molded before application into such shape as will cover the knuckle completely—integral, but with an open longitudinal joint which permits it to be sprung open so as to slip over the knuckle, whereupon it resumes its spherical shape. It is in evidence that more than 500,000 of these ball-bearing couplings with such packing had been sold by complain-

ant down to the time he testified. By reason of its shape, it conforms to the contour of the spherical knuckle, and thereby prevents not only vertical movements, but also lateral chucking, and holds the thill-iron firmly within its grasp in all directions, and prevents rattling. It is useful. That it is also novel, a brief review of the prior patents relied on by defendant will demonstrate:

In the Temple patent, 297,043, June 5, 1883, the packing, called in that patent a "flexible sleeve," is made of rawhide or other suitable flexible material; but the metallic barrel over which it is slipped is cylindrical, and the packing does not cover its ends. The packing is itself cylindrical, and to any contact of parts caused by lateral or tortional twists it supplies no nonmetallic buffer. Five other forms of barrel varying from the cylindrical are shown, but in none of them does the packing extend over the ends or sides. Appellant's brief asserts that, "when the packing is used on the form [of barrel] shown on the left of Fig. 3 [Temple patent], it will shape itself to the form called for by the claim of the patent in suit." There is no warrant in the Temple patent for such assertion. Nothing therein indicates that the sleeve, even when in use, covers anything except the peripheral surface of the barrel.

The Hannan device, 341,235, May 4, 1886, is similar to Temple's. The thill-iron is bifurcated, and formed with a rigid cylindrical hinge-pin, around which is wrapped a bushing of leather or other suitable material.

Two patents to Murray, 357,221, February 8, 1887, and 377,861, February 14, 1888, show draft-irons with spherical knuckles, and draft-eyes with spherical recesses, but they do not indicate any packing or bushing; and the same is true of Blackman, 463,681, November 24, 1901, and of Bradley patent of 1892, referred to supra, in which a lubricant was fed into the socket from an absorbent plug. Murray, however, also took out a Canadian patent September 18, 1888. It shows a thill-iron in the bifurcation of which there is a ball with cylindrical trunnions, which is inserted in a recess in the draft-iron. Upon the top of this ball, and between it and a so-called metal follower which keeps it in place, there is located an "inverted cup-shaped packing, preferably of leather or rawhide, or similar elastic material, preferably soaked in or impregnated with a suitable lubricant." In the bottom of the recess, under the ball, is laid a similar cup-shaped packing. This closely resembles the device of the patent, but is not the same, since it is not integral, and therefore does not cover the ball as completely as does the packing of the patent; the two cups being separated from each other by the width of the trunnions. There is no anticipation.

On the question of invention the patent is apparently a very narrow one. Leather packing was old, and, in whatever form it might be when put in place, the friction and pressure of the ball in the spherical socket would naturally tend to bring it into spherical form. Nevertheless the molded and integral packing of the patent appears, from the testimony of complainant, to have prevented rattling to an extent not secured by other forms of packing, with which he experimented for five years before he hit upon this device. And it has commended

itself to the public, as large and increasing sales indicate. Defendant has introduced no evidence on this branch of the case except the earlier patents, and we are inclined to the conclusion expressed by the judge who heard the cause at circuit:

"It is quite true that pieces of rawhide, cloth, or leather of any description placed in the spherical recesses beneath the wrist or knuckle of the thill or pole, and also above before the draft-eye is closed and fastened, will form a sort of substitute for the packing described. So pieces of flat leather so placed, the one piece above and the other piece below, if cut of the right size and thickness, will constitute an * * * inferior substitute; * * * but such substitutes are not the equivalent of the packing described, * * * and all substitutes of that description used prior to complainant's invention * * * did not serve the purpose for which designed, except to a * * * slight extent."

The patent must be confined closely to the precise device of the claim. The specification states that "the packing may be composed of separate halves," but no such form is included in the claim, nor would the prior art allow the patentee so to include it. To the extent of the specific claim, however, we are not inclined to defeat the patent merely because the change from earlier devices is slight and apparently simple, when it is, as this appears to be, novel, efficient, and popular. Infringement is not disputed.

The first patent included in the second suit, No. 28,571, May 10, 1898, is for "Design for a Washer for Thill-Couplers." The specification states that "this design relates to the configuration of a washer for thill-couplings. The essential feature of my design consists in an approximately spherical body which is truncated at both ends, and divided longitudinally at one side." The subject of the patent is the identical integral spherical truncated washer we have just been considering, which is placed in the recess of the draft-eye as packing for the knuckle of the thill-iron. When so placed, it is as much out of sight as was the horseshoe calk in Rowe v. Blodgett, 112 Fed. 61, 50 C. C. A. 120, with which cause the one at bar seems to be on all fours. It is another instance of the "liberal," if not lax, practice in issuing design patents which was therein referred to. The washer, like the horseshoe calk, is not intended for display, but for an obscure use. There is no evidence that its form appeals in any way to the eye, or serves to commend it to purchasers and users as a thing of beauty. There is not a scintilla of evidence that the sale of a single washer was ever induced by reason of any attractiveness in its appearance. Functional utility entitled the patentee to the mechanical patent already discussed, but mere functional utility did not entitle him to a design patent for the same article.

The other design patent, No. 32,747, May 29, 1900, is for the draft-arm part of the thill-coupling with which the spherical leather washer is used. The specification states that:

"The leading or material feature of my design consists in the inverted U shaped clip, a, and provided with a draft-arm, b, extending at substantially a right angle therefrom. * * * The clip, a, is flattened out at the point, c, where it passes over the axle and terminates in the cylindrical ends, d, which ends are threaded in the usual way, the threads not being shown. The draft-arm, b, upon its lower side, is curved or rounded both longitudinally and laterally, as shown at b' and terminates in the eye, d'. The upper face

of the said draft-arm, b, is cut away as shown at e; and the central portion of the said draft-arm is removed, as shown at e', to form a spherical socket to receive a spherical knuckle connected with the thill-iron."

When it is remembered that what the patentee was seeking for was such a packing as would improve his coupling of spherical knuckle and socket, it is not surprising to find a close counterpart of the above-described draft-arm in his earlier patent of 1892. Fig. 1 of that patent is here produced:

We find the "inverted U shaped clip" at a, and the "draft-arm extending at substantially a right angle therefrom" is found at f. The clip is "flattened out where it passes over the axle." It terminates in "cylindrical ends, which ends are threaded," shown at B. The "draft-arm upon its lower side is curved or rounded both longitudinally and laterally," as may be seen from inspection of the contour of f. The "upper face of the draft-arm is cut away," and the "central portion removed to form a spherical socket to receive a spherical knuckle," as is depicted very clearly in the drawing. The design of the patent in suit is almost a Chinese copy of the drawing of the draft-arm in the patent of 1892, the only variance being an extremely slight difference in the degree of curve longitudinally on the lower side. But such a trivial variance is not sufficient to support a patent. As was said by the Court of Appeals in the Sixth Circuit:

"The difference in the curve at the bottom [of the frame for electrical machines] is one which would suggest itself to any workman, and does not involve that exercise of the inventive genius which is as necessary to support a design as a mechanical patent." Westinghouse E. & M. Co. v. Triumph Electric Co., 97 Fed. 99, 38 C. C. A. 65.

The patent in suit is anticipated by the structure shown in complainant's patent of 1892, and is therefore void.

A motion was made to dismiss the appeal in suit No. 2 upon the following state of facts: The cause was heard on April 16, 1903. The decision of the court expressed in an opinion was filed May 23d, 122 Fed. 871. A decree in favor of complainant, sustaining the validity of the patents, and ordering injunction and accounting, was filed May 25th. On June 23d another decree was entered, sustaining the validity of the patents, and ordering injunction and accounting, but providing for a suspension of the injunction upon filing a bond. This decree of June 23d recited the filing of the opinion, but made no reference whatever to the decree of May 25th. On July 3d, defendant filed the bond required upon suspension of the injunction. On July 23d, petition for appeal from decree of June 23d was apparently left with the clerk, or forwarded to the judge, who on July 27th signed an allowance of appeal, which, with assignment of errors, was filed July 29th. The assignment of errors is dated July 23d, and indorsed by the judge, "Presented July 27, 1903." Apparently no appeal bond was filed with these papers. On August 3d, complainant made a motion to set aside the appeal allowed July 27th upon the ground that it was not taken within 30 days from entry. On August 6th the motion was granted, and by an order dated and filed that day it was provided that the "appeal is dismissed." On August 3d the defendant moved for a rehearing and review of the decree entered June 23d, and on August 10th the court granted said motion, and entered an order to that effect. Subsequently on the same day a decision which recited that the court had considered the rehearing was filed. It found in complainant's favor as to validity of the patents, and directed injunction and accounting. Thereafter, on August 12th, a decree was entered, which, after reciting the filing of opinion on May 23d (122 Fed. 871), the entering of decree on June 23d, the allowance and filing of notice of appeal, and the granting of motion to dismiss the same, contains the following:

"Whereupon counsel for defendant on the same day having moved for a rehearing for the sole purpose of having a later decree entered, from which to appeal, and said motion for rehearing having been granted solely for such purpose, the court at once, without argument, did decide that the complainant's patents mentioned in the bill of complaint herein are valid," etc.

This decree of August 12th adjudged the validity of the patents, their ownership by complainant, and infringement by defendant, and ordered injunction and accounting, with a provision for suspension of injunction pending appeal. It contains no reference whatever to the decree of May 25th. Appeal from this last decree of August 12th was perfected in proper form, and within 30 days from entry. Such appeal is the one now before this court, which complainant moves to dismiss.

Three propositions are advanced in support of the motion.

First. "The Circuit Court erred in granting a motion for a rehearing after the time had expired in which to appeal, in view of the fact that such motion for rehearing was made for the sole purpose of compelling complainant to enter a new decree, from which an appeal could be taken."

Second. "That the Circuit Court erred in granting the motion for a rehearing, which did not comply with equity rule 88."

Manifestly, whether the court below erred or did not err in entering a certain decree is a question to be presented upon review of such decree. It has nothing to do with a motion to dismiss appeal from such decree. The facts and circumstances which make the appeal effective or not all arise subsequent to the entry of the decree.

Third. "The Circuit Court erred in granting a petition for a rehearing, for the reason that the term at which the cause was argued had passed, and no petition or appeal or motion for rehearing had been made during said term."

In addition to what has just been said, it may be noted that the April term in the Northern District begins on the first Tuesday of that month. The next term begins on the first Tuesday of December. The April term continues until the next ensuing term begins, and all the transactions above set forth took place during the April term.

In suit No. 1 the decree of the Circuit Court is affirmed, with costs to complainant.

In suit No. 2 the decree of the Circuit Court of August 12, 1903, is reversed, with costs to defendant, and the cause remanded, with instructions to dismiss the bill.

Petition for Rehearing.

(November 28, 1903.)

PER CURIAM. The petition for rehearing merely presents again the argument advanced upon appeal, which was fully heard and duly considered.

Motion denied.