WILLIAMS CALK CO. v. KEMMERER et al.

(Circuit Court of Appeals, Third Circuit. June 6, 1906.)

No. 3.

1. PATENTS—DESIGNS—SUBJECTS PATENTABLE.
    An article to be a proper subject for a design patent must be one which by artistic treatment in form and configuration may be given value from an æsthetic point of view.
    [Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 13.]

2. SAME—HORSESHOE CALK.
    The Williams design patent, No. 29,793, for a horseshoe calk, is void because the subject of it is not one patentable as a design.

3. SAME—INFRINGEMENT—HORSESHOE CALK.
    The Williams patent, No. 666,583, for a horseshoe calk, if valid, is limited by the prior art and by the proceedings in the patent office to the precise structure shown. As so limited, held not infringed.

Appeal from the Circuit Court of the United States for the Middle District of Pennsylvania.

For opinion below, see 136 Fed. 210.

H. S. Knight, for appellant.

Archibald Cox, for appellees.

Before DALLAS and GRAY, Circuit Judges, and CROSS, District Judge.

CROSS, District Judge. On December 13, 1898, design letters patent No. 29,793, were issued to one John R. Williams for a new, useful, and original shape or configuration of a horseshoe calk, and on January 22, 1901, letters patent No. 666,583 were granted to said Williams for certain new and useful improvements in horseshoe calks, both of which patents were subsequently assigned to the complainant. The complainant has filed a bill alleging infringement of both of these patents, and asking the usual relief in such cases. The Circuit Court, on final hearing, dismissed the bill, with costs, both on the ground of the invalidity of the patents and because they had not been infringed.

We think the design patent is invalid. Section 4922 of the Revised Statutes [U. S. Comp. St. 1901, p. 3396] was not intended to embrace a patent for such a design as is set forth in the design letters patent under consideration. It was intended, in order that

a design might be patentable, that it should of itself, as an artistic configuration, present something new and useful from an æsthetic point of view. Within the meaning of the act, there is nothing artistic, ornamental, or decorative in the design of a horseshoe calk; it is essentially a mechanical, and not an æsthetic, device. It is impossible to suppose that it should be bought or used because of its æsthetic features. Its success as a calk would depend upon its useful, and not its artistic, character. As was well said in Rowe v. Blodgett & Clapp Co. (C. C.) 103 Fed. 873:

"Design patents refer to appearance, not utility. Their object is to encourage works of art and decoration which appeal to the eye, to the æsthetic emotions, to the beautiful. A horseshoe calk is a mere bit of iron or steel, not intended for display, but for an obscure use, and adapted to be applied to the shoe of a horse for use in snow, ice, and mud. The questions an examiner asks himself while investigating a device for a design patent are not 'What will it do?' but 'How does it look? What new effect does it produce upon the eye?' The term 'useful' in relation to designs means adaptation to producing pleasant emotions. There must be originality and beauty; mere mechanical skill is not sufficient."

The views thus expressed by Judge Townsend were affirmed by the Circuit Court of Appeals for the Second Circuit in 112 Fed. 61, 50 C. C. A. 120, and fully express our own as to this patent.

The mechanical patent of the complainant has only one claim, as follows:

"A horseshoe-calk constructed with an attaching screw-shank, a square base, radial blades having vertical flattened beveled edges, vertical straight sides, and rounded, beveled, outwardly-tapering knife-edge lower ends, providing a conoidal-shaped tread, and arching recesses between the blades beneath the square base, the widening of the inner ends of the blades to form the arching recesses, preventing the calk from becoming completely worn down, so as to leave a wrench-hold."

This claim apparently contains seven elements which are set forth with unusual particularity and minuteness. Without considering the question of the validity of this patent, it is sufficient to say that even a cursory examination of the prior art discloses a necessity for the restrictions which the patentee imposed upon himself when he phrased his claim with such guarded and minute particularity. This was not done idly or of choice, but because it was not otherwise possible for him to disclose anything that savored of novelty or invention.

It is perhaps true that the exact form of construction claimed by this patent cannot be found in any other one patent of prior date, but all, or substantially all, of the elements it embraces can be repeatedly found in the prior art. For example, we find the square base, the screw attachment, the radial cruciform blades, the vertical straight sides, the arching recesses between the blades, and the conoidal shaped tread. It is obvious that the foregoing embrace the salient features of the complainant's device. The necessity which so conspicuously controlled the patentee in minutely particularizing and qualifying the elements of his claim becomes all the more apparent, when we examine the file-wrapper of the patent in suit. Such an

examination discloses that he was compelled over and over again to amend and narrow his claims in order to avoid the prior art, and prevent the rejection of his application. Thus the file-wrapper shows that Williams first claimed for calks with the ends formed with bevels, and again with rounded lower ends. These were rejected; the examiner saying:

"There is no invention whatever in rounding off or beveling the cutting edges as desired, this being a matter of mere choice in shapes, and inevitably resulting from the ordinary wear of the shoe for a few hours or days."

After such rejection the claims were amended, so that they respectively read having "beveled lower ends," "rounded lower ends," and "beveled and rounded lower ends." These amended claims were in turn rejected for substantially the same reasons as those given for the prior rejection. The claims were then consolidated and amended so as to read with "rounded beveled outwardly tapering knife-edge lower ends, providing a conoidal tread"; the applicant adding at the foot of his amendment the following:

"The single claim now presented is restricted to a construction not found in the references, and which comprises a conoidal tread of peculiar construction."

This amendment was likewise rejected, the examiner stating that:

"The arching recesses, the beveling and the knife-edges are fully disclosed in the art. [See O'Neill.] The conoidal tread has been commented on previously. The slight difference shown is a matter 'of degree rather than of invention."

The claim was then put in the form in which it appears in the patent, and as thus framed was at first rejected, but was subsequently allowed and the patent issued.

This brief synopsis of the file-wrapper, taken in connection with what has been said in relation to the prior art, demonstrates that the claim if upheld, must be narrowly and strictly construed. The waivers and disclaimers of the file-wrapper were acquiesced in by the patentee in order to obtain his patent, and he is estopped from denying their force and effect.

"Where an applicant for a patent to cover a new combination is compelled by the rejection of his application by the Patent Office to narrow his claim by the introduction of a new element, he cannot after the issue of the patent broaden his claim by dropping the element which he was compelled to include in order to secure his patent." Shepard v. Carrigan, 116 U. S. 593, 597, 6 Sup. Ct. 493, 29 L. Ed. 723. "It is well settled that the claim as allowed must be read and interpreted with reference to the rejected claim and to the prior state of the art, and cannot be so construed as to cover either what was rejected by the patent office or disclosed by prior devices." Hubbell v. United States, 179 U. S. 77, 80, 21 Sup. Ct. 24, 45 L. Ed. 95.

When the claim is construed as we have indicated that it must be, it does not appear open to question that the defendants' device does not infringe the complainant's. Its patent is distinguished from the prior art, if at all, solely by the construction appearing at the end or tread of the calk. The patentee claimed as to this part of his de-

vice two rounded cutting or knife-edged surfaces, such as are plainly indicated in figures 1 and 4 of the drawings accompanying the patent and here reproduced.

The defendants' calk is of entirely dissimilar construction, as a glance at the subjoined diagrams will show.

Fig. 1.    Fig. 2.    Fig. 3.

They are not knife-edged, they are not rounded, they are not outwardly tapering, they are not vertical, and are rounded rather than beveled, but, if beveled, they are only slightly so, and at the lower ends. The above differences are disclosed by an inspection of the diagrams and exhibits in the case. If, in addition to such inspection, an attempt were made to apply the language of the claim of the patent in suit to the defendants' device, it would be unsuccessful, except in two or three particulars. The screw-shank attachment, the square base, and the arching recesses between the blades beneath the square base of the two devices might be sufficiently described in the same terms, but in all other respects language which would adequately and appropriately define the one would be entirely inadequate and inappropriate to define the other. In suggesting, as we have just

done, that perhaps three of the elements of the claim of complainant's patent can be found in the defendants' alleged infringing device, we have allowed much more than is granted by the defendants' expert, who says:

"Of the seven elements of this claim, I can find, therefore, but one which is unquestionably present, namely, the screw-shank. The second and third, namely, the square base and radial blades, have at the best but an imperfect representation. The fourth, sixth, and seventh elements are certainly absent, even on the most liberal construction."

Then, after expressing the opinion that the complainant's patent discloses no patentable novelty, he adds:

"It is obvious, however, that with three of the seven elements of the combination entirely absent from the exhibit [defendants'] under consideration, and with three of the remaining but imperfectly represented, it is impossible to consider the exhibit as an embodiment of the combination of elements recited in the claim of the patent in suit."

But, as was said by the court below:

"The significant point of difference to that where the claim [complainant's] calls for blades with strictly vertical sides developing into completely rounded ends, the defendants, after narrowing down their calks by tapering the sides, cut off the ends of the blades so as to form a sort of truncated pyramid or cone; the cruciform radial effect being at the same time retained, and an effective gripping surface provided by a notching or pointing of the ends. Form here is essential, and equivalency of function counts for little in view of the prior art, as well as the express terms of the claim."

If the complainant held a basic or initial patent, a different view might perhaps be taken of the case, but confined as its patent is in its scope, and limited as it must be to the precise wording of its claim, we do not hesitate to say that the defendants' device is not an infringement.

The decree below, dismissing the bill, with costs, is affirmed.