## PASHEK v. DUNLOP TYRE & RUBBER CO.

(District Court, N. D. Ohio, E. D.   June 24, 1925.)

No. 971.

1. **Patents ⬥15—Automobile tire tread is not proper subject for design patent.**

Automobile tire tread is not proper subject for design patent.

2. **Patents ⬥48—Design patent depends for utility on pleasing effect to eye, and must be ornamental and decorative.**

In design patent, utility depends on pleasing effect imparted to eye, and not on any new function, and design, to be patentable, must be ornamental and decorative.

3. **Patents ⬥328—52,962, design patent for automobile tire tread, invalid for anticipation.**

Pashek patent, No. 52,962, February 4, 1919, ornamental design for automobile tire tread, *held* invalid, for want of invention.

In Equity. Suit by Albert L. Pashek against the Dunlop Tyre & Rubber Company. Bill dismissed.

A. E. Merkel, of Cleveland, Ohio, for plaintiff.

Hull, Brock & West, of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. The bill is based on and charges infringement of design patent No. 52,962, issued February 4, 1919, to plaintiff. The patent is for an ornamental design for an automobile tire. The ornamentation is applied to the tread surface. It consists of a central circumferential strap or ridge, continuous grooves on each side thereof, except as broken by lugs connecting the central strap with the skid pads, and a series of skid pads on each side of said grooves, with rearwardly inclined grooves or openings between the pads. Each pad is connected with the circumferential ridge by a narrow lug, some times called a flow bar, from the function performed by it during the process of molding the tire.

Defendant's tire is likewise covered by a design patent, 62,172, issued to Wallace Henry Paull April 3, 1923, on application filed July 25, 1921. The two designs are almost identical. There are minor differences in the shape of the skid pads and in the lugs or flow bars. In plaintiff's design, the flow bar is of substantial width and strength, whereas defendant has striven to eliminate the flow bar as far as it can be done, while permitting it to perform the required function during the process of manufacture. It is much narrower and less substantial. It is defendant's claim that this flow bar is a disadvantage in a finished tire, and would be removed before the tire is sold, except for the expense of the additional operation. In use it is said to break down and disappear soon after the tire is put in use, so that the circumferential grooves are practically continuous. Despite these differences, however, I am of opinion, if plaintiff's design patent is valid, infringement is fully established.

No question of unfair competition enters into this case. Tires were manufactured embodying plaintiff's design during a period of some two years between 1917 and the earlier part of 1920. No claim is made that the appearance thereby imparted to the tire has become familiar to the public as identifying the tire as any maker's product. This tire appears to have disappeared from the market before defendant began the manufacture of a tire embodying Paull's tread design, and defendant's tires with this tread have been manufactured, sold, and used in large quantities since 1921.

The only question, then, in the case, is whether or not plaintiff's design patent is valid. Its validity is challenged on two grounds: (1) That an automobile tire tread is not a proper subject of a design patent; and (2) that plaintiff's design does not, in view of the prior art, involve either patentable novelty or invention, beyond the expected skill of a trained draftsman.

[1] 1. In my opinion, an automobile tire tread is not a proper subject for a design patent. All tire treads involve more or less similar features. The tread surface is broken up and given certain characteristics for reasons of function and utility. It is and has long been quite common to use one or more circumferential ribs with circumferential grooves, more or less continuous, disposed on each side thereof. Skid pads or raised surfaces, of various shapes and sizes, have likewise long been common in the industry. The earliest, and perhaps best known, is the Goodyear diamond-shaped all-weather tread. The advantages thereby obtained are grip and traction, particularly

upon smooth or wet road surfaces, thereby guarding to some extent against skidding or slipping. In plaintiff's design, the ridge, grooves, and skid pads are primarily designed to realize these advantages of function and utility. In recent years, also, automobile engineers have striven to produce noiseless tires; i. e., to eliminate noises due to suction and wind swishing. It has been found that inclining the grooves between the skid pads rearwardly to the direction of travel eliminates some of the noise due to air swishing, and that breaking the surface eliminates noise due to suction. The connecting lugs or flow bars perform no useful function after the tire is put in use, but during the process of molding the tire it is found necessary to leave lugs, in order that air may be expelled.

[2] The tread surfaces are designed primarily with these objects in view. Ornamentation and decoration have little if any relation thereto. In a design patent, as has been well said, utility depends upon the pleasing effect imparted to the eye, and not upon any new function. The design, to be patentable, must be ornamental and decorative, as well as embody novelty and invention. The object of design patents, also, it is said, is to encourage works of art and decoration which appeal to the eye, the æsthetic emotions, and the sense of the beautiful. The primary object of plaintiff's design tread is not to please the eye; it is not to ornament or decorate a tire; but it is to accomplish certain functions in use and in the process of manufacture. In use the tire tread is not intended to be ornamental or decorative. It is intended for hard wear upon rough surfaces and under all conditions of mud and weather. For this and other reasons, I am of opinion that the tread in question is not the proper subject of a design patent. This conclusion is required and is fully supported by the following authorities: Rowe v. Blodgett (2 C. C. A.) 112 F. 61, 50 C. C. A. 120; Theodore W. Foster v. Tilden-Thurber Co. (1 C. C. A.) 200 F. 54, 56, 118 C. C. A. 282; Dietz v. Burr (2 C. C. A.) 243 F. 592, 156 C. C. A. 290; North British Rubber Co. v. Racine Rubber Tire Co. (2 C. C. A.) 271 F. 936.

[3] 2. Assuming that plaintiff's tire tread is, however, a proper subject for a design patent, it must, none the less, be held invalid for want of invention over the prior art. It is unnecessary to review that art at length. The most pertinent disclosures are: Armstrong, 52,298; Coleman, British, 26,722 of

8 F.(2d)—41

1906; Jones, 43,047; Gates, 49,645; Denman, 49,953; Hopkinson, 50,202; and Pratt, 52,116. See, also, India Rubber World, Feb. 1, 1915, and July 1, 1915; also Motor World, April 12, 1916. An examination thereof will disclose nearly every conceivable variety of nonskid tire treads. With that art before one, no invention was required beyond the expected skill of a trained draftsman to design plaintiff's tread. This conclusion is required and fully supported by the following authorities: Aluminum Goods Mfg. Co. v. Buckeye Aluminum Co. (D. C.) 291 F. 806; Chas. Boldt Co. v. Nivison-Weiskopf Co. (6 C. C. A.) 194 F. 871, 114 C. C. A. 617; Westinghouse, etc., Co. v. Triumph Elec. Co. (6 C. C. A.) 97 F. 99, 38 C. C. A. 65; Imperial Glass Co. v. A. H. Heisey & Co. (6 C. C. A.) 294 F. 267; Dietz v. Burr (2 C. C. A.) 243 F. 592, 156 C. C. A. 290.

It results, from these views, that plaintiff's design patent is invalid, and that his bill should be dismissed, at his costs.