### In re KOEHRING.

Court of Customs and Patent Appeals.
January 27, 1930.

Patent Appeal No. 2167.

Graham and Garrett, Associate Judges, dissenting.

John F. Robb and Harry C. Robb, both of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C., for Commission of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Judge. This appeal from the decision of the Commissioner of Patents, refusing a patent for a design for a concrete mixer truck body and frame, presents as its main issue the very interesting, and ofttimes troublesome, question as to what articles of manufacture may constitute the subject-matter of design patents.

The Commissioner, largely upon the authority of Ex parte Steck, 1902 C. D. 9, 98 O. G. 228, held that a machine with movable parts is not an "article of manufacture" within the meaning of the design patent law, the pertinent portion of which reads as follows: "Any person who has invented any new, original, and ornamental design for an article of manufacture * * * may * * * obtain a patent therefor."

The Commissioner, also as a ground of refusal, under the authority of Smith v. Whitman Saddle Co., 1893 C. D. 324, and Northrup v. Adams, 1877 C. D. 322, held that the design involved in this case was not ornamental and that the same belonged "to the mechanical arts and not the æsthetic or *fine arts.*" The Commissioner, without discussion, also seems to have agreed with another reason assigned for denial of patent by the examiner, that the design is not a "unitary design"; that is, that the items of the design are not a unit in appearance.

Before us the Commissioner further urges that the question as to whether the concrete mixing machinery involved is a proper subject-matter for a design patent need not be

decided by this court, since it must be held, under In re Stimpson, 58 App. D. C. 86, 24 F.(2d) 1012, 369 O. G. 731, that this character of machine is not "inventively ornamental." We think that we must decide both issues.

The riveting machine in controversy in the Stimpson Case was held not to be ornamental, because the drawing showed that it was "purely utilitarian, and without ornamentation of any kind," and for the further reason that "there is nothing about the assembled mechanical device which serves to beautify, embellish, or adorn it. The several parts of the mechanism, whether circular, curved, rounded, or spiral, are assembled into an entirety which is lacking in symmetry, wanting in grace, and destitute of any appeal to the senses or emotions. The design has no human interest, other than that aroused by the utilitarian nature of the machine."

We will dispose of this contention by saying that, if we were willing to follow the strict letter of the language of this decision, we would not regard it as a bar for holding that the machine in issue here possesses ornamentation, since the appearance and general characteristics of the machines radically differ.

■ Upon the proposition as to what is "an article of manufacture," within the meaning of the design patent law, there have been many decisions of the Patent Office and the courts, some of which are apparently in conflict, but it is readily observable that it has become the settled law that tools and mechanisms which are patentable because of their utilitarian qualities may also properly be the subject-matter for design patents if they possess certain qualities which the law requires.

■ In our view of the case, the beauty and ornamentation requisite in design patents is not confined to such as may be found in the "æsthetic or fine arts." It is not reasonable to presume that Congress, in basing a patent right upon the ornamentation or beauty of a tool or mechanical device, intended that such beauty and ornamentation should be limited to such as is found in paintings, sculpture, and artistic objects, and which excites the æsthetic sense of artists alone.

■ In declaring that, by the enactment of the design patent law, Congress expressed a desire to promote more beauty, grace, and ornamentation in things used, observed, and enjoyed by our people, the courts have not omitted on frequent occasions to mention the fact that such ornamentation as was intended was an element in the salability of the article.

Franklin Knitting Mills, Inc. v. Gropper Knitting Mills, Inc. (C. C. A.) 15 F.(2d) 375. Notwithstanding the frequency of judicial declaration concerning "attractiveness to purchasers" and increased "salability," it is also a well-settled principle that a design patent may not be used for the purpose of a trade-mark. North British Rubber Co. v. Racine Rubber Tire Co. (C. C. A.) 271 F. 936.

Appellant's design of a truck body and frame for a concrete mixer shows the frame to be so designed as to place the different elements of the whole machine, including the hood, gas tank, mixer, etc., into a more symmetrical and compact whole than was known in the prior art. Aside from this arrangement, which removes much of the unsightliness from the machine, the covering of the motor is made to resemble, in appearance, an automobile hood, and the angular bars and framework of the same are given a rounded or oval appearance. By the plan of assembly of the more or less rounded hood, round gas tank, and rounded frame corners into a compact and more symmetrical whole, an article, possessing more grace and pleasing appearance than existed in the prior art, has been produced. This effect in the design as a whole is ornamental and inventive.

Since it is clear that Congress meant the design patent law to apply to tools and mechanisms of utilitarian character, it follows, we think, that it had in mind the elimination of much of the unsightly repulsiveness that characterizes many machines and mechanical devices which have a tendency to depress rather than excite the esthetic sense. In this mechanical age, when machines, engines, and various kinds of mechanisms are transported on our public highways and streets and moved by their own momentum from place to place, it is certainly not undesirable that some of the unsightliness—and, as frequently occurs, frightfulness—of such contrivances be eliminated, if possible. To conclude that Congress, in the enactment of the design patent law, had such a result in contemplation is not unreasonable, since such a purpose is in entire harmony with the declared aim of the Legislature.

The law seems to be well settled that the term "an article of manufacture" does not include every article of manufacture. The courts have declared that certain articles which are more or less hidden from view when in use are not the proper subject-matter for design patents. In Rowe v. Blodgett & Clapp Co. (C. C. A.) 112 F. 61, a horseshoe calk, in Bradley v. Eccles (C. C. A.) 126 F. 945, a washer for a thill-coupling, and in

Pashek v. Dunlop Tyre & Rubber Co. (D. C.) 8 F.(2d) 640, an automobile tire tread, were held not to be patentable under the design patent law. Neither do the purposes of the act embrace articles, the ornamentation of which, owing to their nature, could be a matter of concern to no one. North British Rubber Co. v. Racine Rubber Tire Co., supra; Theodore W. Foster & Bro. Co. v. Tilden-Thurber Co. (C. C. A.) 200 F. 54, 56. In the last-cited case, in referring to this class of articles, the court said: "It is also true now, as before the amendment, that among articles of manufacture there are some incapable of being the subjects of design patents, *for want of reason to suppose that their appearance can ever really matter to anybody.*" (Italics ours.)

After careful consideration of all the issues and arguments involved in this case, it would seem to us that the only close question involved in arriving at the correct conclusion is the applicability of the last-quoted rule. The answer to the query, *Is the ornamentation of the truck body and frame at bar a matter of concern to anybody, reasonably within the purview of the act?* points to the proper result to be reached. As is indicated above, we must answer this question in the affirmative.

In the Steck Case, supra, the Commissioner held that the frame of a water tower with movable parts, for the use of fire departments, was not an article of manufacture, in so far as the design patent law was concerned, chiefly upon the ground that the movement of the parts changed the appearance of the article and that, while the parts might be the subject-matter of a design patent, the mechanism as a whole could not be.

In Ex parte Adams, 1898 C. D. 115, 84 O. G. 311, it was again said that the design patent law should not apply to structures having movable parts, and a design patent for a truck side frame was denied upon the theory that the movable parts permitted the presentation of a great variety of forms or designs to the observation.

In Ex parte Klemm & Schreiber, 218 O. G. 603 (1915), however, a very elaborate and complex chair with adjustable back, book rests, book shelves, writing desk, etc., was held to be the proper subject-matter for a design patent. In that opinion, Newton, First Assistant Commissioner, said: "There seems to be no good reason for laying down a hard and fast rule that design patents cannot be granted to cover devices with relatively movable parts." The application was allowed, notwithstanding the fact that the movable parts

of this complex chair permitted a number of designs as far as appearances went.

In an unpublished decision of the Board of Examiners in Chief, dated January 12, 1921, relative to design patent No. 57381, issued March 15, 1921 (on file in the Patent Office and examined by us), for a tractor, the board, in discussing the question of design patents for machines or machine parts, used the following language:

"The claim for a design in this case was rejected on the authority of Ex parte Steck, C. D. 1902, page 9, holding that a machine cannot be the subject of a design patent.

"It is our opinion that no arbitrary rule of this sort has been uniformly recognized by the Office or the courts. (Citing ex parte Klemm & Schreiber.) * * *

"It is certainly true that it is the practice of the office to grant designs for frames and other parts of machines and we can see no valid reason why a design patent should not be granted for the general appearance of a machine, disregarding any changes in appearance due to moving parts. It is clear that invention can be and often is displayed in so arranging the parts of a machine, irrespective of its mechanical movements, that they shall have a pleasing and esthetic effect and thus enhance their salability. For example, there are, of course, certain mechanical devices necessary to all locomotives, yet the difference in appearance of an English, German, or French locomotive when compared with an American machine is very marked and not at all due to its moving parts, although some of them may be visible at all times. The general form and proportions of automobiles made by different manufacturers are clearly distinguishable and are recognized as features of inventive design."

In Chandler Adjustable C. & D. Co. v. Heywood Bros. & Wakefield Co., 91 F. 163, Judge Brown, in the Circuit Court for the District of Massachusetts, in holding valid a design patent for a furniture support, said:

"The broad proposition advanced by the defendant, that section 4929 of the Revised Statutes [35 USCA § 73] was not intended to apply to structures having movable parts, is not supported by the citation of any judicial decision; and, though certain rulings of the patent office (Ex parte Tallman, 82 O. G. 337; Ex parte Adams, 84 O. G. 311; Ex parte Smith, 81 O. G. 969; Ex parte Brower [1873] C. D. 151) are presented to support this proposition, I am of the opinion that such a construction of the statute calls for an unwarranted and unreasonable limitation of

the terms 'manufacture' and 'any article of manufacture,' and leads to absurd and unjust results. For example, such a construction would defeat claims like those in Burton v. Town of Greenville [C. C.] 3 F. 642, and Britton v. [White] Manufacturing Co. [C. C.] 61 F. 94.

"To the objection of the defendant that the parts have no necessary, single, infallible, and fixed relation to each other, it is sufficient to say that the complainant describes and shows in his drawing a single and definite arrangement of parts."

In R. E. Dietz Co. v. Burr & Starkweather Co., 243 F. 592, 594, Judge Hough of the Circuit Court of Appeals, Second Circuit, in discussing the applicability of the design patent law to a design for a lantern with movable parts and which performed a mechanical function, said: "While design patents are not intended to protect a mechanical function, or to secure to the patentee monopoly in any given mechanism or manufacture as such, it is immaterial that the subject of the design may embody a mechanical function, provided that the design per se is pleasing, attractive, novel, useful and the result of invention. Ashley v. Weeks, etc., Co., 220 F. at 901, 136 C. C. A. 465. But it is the design that is patented, not the mechanism dressed in the design."

We have cited authorities somewhat at length on the subject of mechanisms having movable parts and performing mechanical functions, in view of the attitude of the tribunals below in regarding the cases of Steck and Adams, supra, as being controlling of the issues before them. In citing the above authorities, it is not our intention to convey the impression that the rule adopted in the Steck and Adams Cases may not have appropriate applicability to certain machines which might be sought to be made the subject-matter for the application of design patents, and which, by virtue of their characteristics and multiplicity of movable parts, would present to the observer, in their different shapes, such a multiplicity or confusion of designs as to result in there being no definite design. It is sufficient to say that, while the concrete mixer, to which applicant's truck body and frame belong, may have movable parts, there is nothing connected with the mechanism before us, or with the machine as a whole, which produces such a multiplicity of designs as to bring it within the rule.

We disagree with the finding of the Commissioner that the items of the design are not a unit in appearance. We think the design of the truck body and frame is composed of units

sufficiently adjusted and related to each other as to present to the observer the design of an article, each part of which has a harmonious relation to all other parts. See Chandler Adjustable C. & D. Co. v. Heywood Bros. & Wakefield Co., supra.

Some apprehension has been expressed against holding that Congress intended giving a monopoly in designs for articles of manufacture like the article at bar. We comfort ourselves with the reflection that, if the monopoly occasioned by a design patent upon such an article did not tend to further the wishes of the Legislature, it is not a matter of disturbing consequence, since the holder of such a monopoly could profit nothing by it.

We conclude, therefore, that the truck body and frame at issue is a proper subject-matter for a design patent, and that the production of the design involved invention. It follows that the decision of the Commissioner should be and is reversed.

Reversed.

GRAHAM and GARRETT, Associate Judges (dissenting). We are of the opinion that the several tribunals of the Patent Office in refusing the application for a design patent in the instant case reached a correct decision, and accordingly we respectfully dissent from the holding of the majority of our court, reversing same.

The Examiner, the Examiners in Chief, and the Assistant Commissioner, acting for the Commissioner, unanimously agreed in the rejection of the application, so that we have that uniformity of decision by the Patent Office tribunals which this court should not reverse unless error clearly appear. We are unable to agree that there was such error.

Broadly speaking, their rejection rests upon the ground that the design disclosed and claimed does not represent patentable subject-matter under the provision of section 4929 R. S., 35 USCA § 73, the pertinent portion of which is quoted in the majority opinion.

The statute in its present form was derived from the Act of July 8, 1870, c. 230, as amended by the Act of May 9, 1902, c. 783, and is perhaps somewhat broader than the design law which it superseded, but not, we think, broad enough to include articles like that here involved.

The present law has been the subject of numerous interpretations, and under it many design patents have been granted. That there have been decisions somewhat conflicting is

not surprising, since opinions of individuals differ, not only as to what is ornamentation, but as to what may be a proper subject-matter for the application of patentable ornamental designs.

We think the principle asserted in Williams Calk Co. v. Kemmerer, 145 F. 928, 76 C. C. A. 466, affirming (C. C.) 136 F. 210, is sound. The subject-matter of the claimed design there involved was a horseshoe calk. Letters patent issued for it, and the article became involved in an infringement suit. The court held the patent invalid because "the subject of it is not one patentable as a design" saying: "An article to be a proper subject for a design patent must be one which by artistic treatment in form and configuration may be given value from an æsthetic point of view."

In North British Rubber Co. v. Racine Rubber Tire Co. of New York (C. C. A.) 271 F. 936, the court said: "Some articles of manufacture are incapable of being the subjects of design patents, for want of reason to suppose that their appearance can ever really matter to anybody."

Other authorities, some of which are referred to in the majority opinion, seem to be to the same purport.

Mention is made in the majority opinion of a design patent upon a chair. It seems to us that there is a manifest difference in the necessary or desirable æsthetic qualities of an article of furniture for use in the household and an implement such as a horseshoe calk or a riveting machine or a concrete mixer.

It may be true that a search of the Patent Office files would disclose many design patents for articles of manufacture which to our minds would present as few elements of appeal to the æsthetic taste as does the article here involved, but, in so far as we can discern from the record, the modern practice in that office is to more generally restrict such patents and bring them within a narrower scope, requiring that the subject-matter shall be one in which ornamentation adds something to the article beyond mere attractiveness for aiding in its sale, and we approve of this later tendency.

Without challenging the opinion that salability may be a legitimate factor for consideration, we cannot bring ourselves to agree that a patent may legally rest upon that as the sole factor, and we see little more than this involved in the mechanism in the instant case.

It would be difficult to lay down any hard and fast rule by which it could be declared affirmatively what articles may properly be the subject of design patent, but we experience little difficulty in arriving at the conclusion that a concrete mixer is not one, thus agreeing with the tribunals of the Patent Office in that regard.

We are unable to believe that it was the intent of Congress to patronize the arts and develop the æsthetic sense of the citizenship by giving the monopoly assured by the patent laws to a design for a concrete mixer. It has escaped our observation if the pulchritude of articles like concrete mixers has ever excited any great public consideration.

In the recent case In re Eifel, O. G. Dec. 17, 1929, 389, 533, this court affirmed the decision of the Commissioner of Patents denying an application for a patent for a design for wrenches. We there said: " * * * But there is no ornamentation possessing originality and beauty sufficient to justify granting a design patent under the statute, *the purpose of which has oftimes been declared to be to encourage art and decoration which appeals to the æsthetic sense*"—citing Smith & Co. v. Peck, Stow & Wilcox Co. (C. C. A.) 262 F. 415; Ex parte Parkinson 1871 C. D. 251. (Italics ours.)

We further said there:

"The rejection of the application by the Commissioner seems to be based upon well settled principles. Nothing has been shown to us to indicate that the decision was erroneous."

We think the reasoning in that case is applicable to the instant case, although the decision there rested upon the design itself rather than the subject-matter.

We pretermit any discussion of other and subsidiary matters that may be involved, such as the patentability of a design for a machine of moving parts, the question of whether a unitary design is disclosed, etc., because we are in dissent upon the issue which we regard as being decisive of the right of the case. We think the decision of the Commissioner should be sustained.