77 U.S. 133
 19 L.Ed. 862
 10 Wall. 133
 CLARK
v.
BOUSFIELD.
 December Term, 1869
 
 ON certificate of division between the judges of the Circuit Court for the Northern District of Ohio, the case being this:
 The Patent Act of July 4th, 1836, 'to promote the progress of the useful arts,' authorized the patenting of any 'new and useful art, machine, manufacture or composition of matter,' and gives an exclusive right to the patentee for a term of fourteen years, with a privilege of renewal for seven in certain cases, but this act did not allow a patent for mere designs.
 The eleventh section of an act of March 2d, 1861, entitled 'An act in addition to an act to promote the progress of the useful arts,' extends this privilege of patent. It secures to the inventor or producer of any original design, &c.; or any new and original impression or ornament, to be placed on any article of manufacture, &c.; or any new and useful pattern, or print, or picture, to be either worked on, or printed, or painted, on any article of manufacture; or any new and original shape or configuration of any article of manufacture, not known or used before, &c., a patent for the exclusive property therein; and it gives this right for a term of years, different from the term granted by the act of 1836 to the inventor of a machine, &c.
 With both acts in force, R. & A. Cross obtained, December 27th, 1864, a patent for a new and useful improvement in machines for graining pails, and other analogous uses. [See the diagram, page 135.] The nature of it, as declared by them in the schedule to the letters patent, consisted in constructing an elastic bed, containing the impression or impressions of the device to be grained upon the pail, in separate panels, each panel to be of different design, so that by moving the pail over the same the various designs would be stamped upon the pail, thus producing a pail whose staves were painted in imitation of different kinds of wood. The patentees then described the instrument or machine, which they stated to be a box, into which the elastic material, with the required designs to be grained upon the pail, is placed, and which might, according to their statement, be constructed of wood or iron, or any other suitable material, and so shaped (describing the shape minutely), that when the pail was adjusted properly upon the bed, and rolled upon and over it, the upper or larger end of the paid should follow the outer curve of the bed, and the lower or smaller should follow the interior or smaller curve with exactness and precision. 'The elastic bed,' they say, 'may present one continuous or uniform design if desired, or it may be arranged in blocks or staves, each of different designs, so that the pail grained thereon or thereby shall present the appearance of being constructed of different kinds or species of wood. The elastic bed may be composed of any suitable impressible material, as rubber or leather; but a compound of glue and molasses, such as is used for printers' rollers, is preferred.'
 The patentees then described the contrivances for working the elastic bed in connection with the pail, so as to effect the graining of the latter. By this contrivance the pail, they state, is readily rolled by hand across the bed, leaving upon it the desired design or figure, or the pail may be suspended on handles, and the elastic bed itself moved beneath it, in a suitably arranged groove or track, producing the same result.* The patentees then set forth their claims, the first two of which only are material:
 First. 'We claim constructing the bed of the elastic material used in graining machines, in the form herein shown, substantially as and for the purposes specified.'
 Second. 'We claim arranging the elastic material aforesaid, whether curved or rectangular in form, in a series of distinct staves or designs, substantially as and for the purposes herein shown and set forth.'
 On a suit below, by Clark and others, assignees of Cross, the patentees, against one Bousfield, for infringement, it was suggested on behalf of the defendant that the second claim was for nothing more or other than a design to be impressed on the bed: and if this was so, that the claim would be void, as a patent could not properly contain a valid claim for a machine, and contain also a claim for a design; that the two things were patentable under different acts and for different terms of time.
 The judges of the Circuit Court were accordingly divided upon the question whether this second claim in said letters patent was for anything patentable other than under the already mentioned section eleven of the act of March 2d, 1861? And if not, whether the patent was not void?
 
 Messrs. J. Canfield and A. G. Riddle, for the plaintiff:
 
 We admit that if this second claim is, in substance, a claim for a design, instead of a claim for a principle in an apparatus, it should have been patented under the act of 1861; but if it is for a principle in an apparatus, then we assert that it does not come under the act of 1861, but under the act of 1836. Now Judge Grier, in Corning v. Burden,** has thus defined the principle patentable as a machine:
 'It is for the discovery or invention of some practicable method or means of producing a beneficial result, or effect itself. It is when the term process is used to represent the means or method of producing a result, that it is patentable; and it will include all methods or means which are not effected by the mechanism or mechanical combinations. But the term process is often used in a more vague sense, in which it cannot be the subject of a patent; thus, we say that a board is undergoing the process of being planed, grain of being ground, iron of being hammered or rolled. Here the term is used subjectively or passively, as applied to the material operated on, and not to the method or mode of producing that operation, which is by mechanical means or the use of a machine, as distinguished from a process. In this use of the term it represents the function of a machine, or the effect produced by it on the material, subjected to the action of the machine. But it is well settled that a man cannot have a patent for the function or abstract effect of a machine, but only for the machine which produces it.'
 This language is both concise and correct, and tested by it our second claim is for the machine which produces the effect, and not for the effect itself. In other words, it is for the machine which grains a pail in staves, which staves represent different kinds of wood, and not for the impression upon the pail, representing staves of different kinds of wood. The means of producing this effect on the pail, is our machine, which comes under the act of 1836; the effect as produced, is a design, which comes under the act of 1861, and for which we claim nothing.
 
 Mr. George Willey, with a printed brief of Messrs. George Willey, John E. Carey, and H. S. Sherman, contra:
 
 The nature and object of the invention, as stated in the specification, contemplated a design and the construction of a bed corresponding with the shape of the design, but as an obvious sequence or incident of the design. Nothing is claimed on the material, or box or bed or its material, nor as to form could anything be claimed in the way of invention, inasmuch as it involves the mere measurement of surface, the simplest of mechanical operations. Then it says, 'the elastic bed may present one continuous or uniform design if desired, or it may be arranged in blocks or staves, each of different designs,' meaning block or stave designs. Again, it speaks of 'different designs arranged in staves,' which is but another form of representing stave designs. Again, it speaks of the 'pail being rolled across the bed and grained in staves in imitation of various woods or marbles.' The specification does not say, series of separate pieces or blocks, but a 'series of distinct staves or designs,' and the specification speaks of 'different designs arranged in staves, impressed upon a single united mass, so as to produce the same effect as when constructed in separate blocks,' evidently treating staves and designs as synonymous or convertible, the word 'staves' meaning stave designs; so that from all these considerations it is obvious that stave designs impressed on a bed, whether curved or rectangular, for the purpose of transferring said stave designs to a pail or 'other analogous uses,' or to rectangular objects, is the substantial object or meaning of this second claim. If this be so, then the doubt suggested below is well founded and the plaintiff has no valid patent.
 Mr. Justice NELSON delivered the opinion of the court.
 
 
 1
 It will be seen by reference to the eleventh section of the act of 1861, that if the second claim is patentable under this section, it must be a claim for an original design or impression, or ornament, or pattern, or picture, and the like, wholly irrespective of the means of producing it. The patent is simply for the design, &c., itself.
 
 
 2
 In order to understand the full meaning of this second claim, it will be useful to settle the meaning of the first, as the two are intimately connected.
 
 
 3
 The first, as we have seen, is for constructing the bed for the elastic material used in graining machines in the form shown and for the purposes specified. The patentees describe it as a box or bed, and which may be constructed of wood or iron, or of any other suitable material. This box or bed is made for the purpose of holding the elastic material, whether of rubber or leather, or the compound of glue and molasses, which is preferred. Now, the second claim is for arranging the elastic material, when placed in this box or bed, whether curved or rectangular in form, 'in a series of distinct staves or designs,' for the purpose specified, that is, for the purpose of graining pails in the variety of colors or figures described. The elastic bed may be arranged, as is stated in the specification, so as to present one continuous or uniform design, or it may be arranged in blocks or staves, each of different designs, so that the vessel shall present the appearance of different kinds of wood, as rosewood, oak, walnut, and others. It may also be constructed of separate pieces or blocks, as shown in the drawing, or the material may be a single united mass, impressed by different designs arranged in staves, so as to produce the same effect as when constructed in separate blocks. The two claims, as we see, are closely connected, and each essential to the complete construction of the instrument or apparatus, which, when put into practical operation by the contrivances pointed out in the specification, can accomplish the desired result, which result is the graining of the exterior body of the pail with a variety of colors and figures.
 
 
 4
 The learned counsel for the defendants below insists that this second claim is only an arrangement of designs, and, in a limited sense, he is no doubt right, but in its connection with the first claim, and with the machine for transferring the design to pails, it is more; it is a part of the machine or instrument, and an indispensable part; it is the elastic bed of rubber, or of leather, or compound of glue and molasses, of any arranged figure or design, that constitutes an element in the machine, and which, with the curved box and contrivances for working the instrument, produces the desired result. The figure or design is but incidental, and, as such, has no other protection than that which the patent secures to the inventor of the machine. The right to the use of the machine carries along with it the right to use the designs.
 
 
 5
 The arranged figure in the elastic bed is not the one protected by the eleventh section of the act of 1861; that is the one which is transferred to the pail or wares, where its beauty is first visible to the eye. While it remains in the elastic material it exhibits no more beauty than if engraved on stone or metal.
 
 
 6
 It may be that the inventors of the machine for impressing figures or designs upon pails or other wares would not be protected from using figures or designs, the right of property in which had been secured to the original inventor under this eleventh section, but they may clearly use any and all not thus protected. The machine in question is invented for reducing to practical use these figures and designs, and will make them profitable to the original inventors or owners of them, if they choose to employ it.
 
 
 7
 We are of opinion that the first question should be answered in the affirmative and the second in the negative.
 
 
 
 *
 The reader to whom the foregoing description of the instrument and of its mode of operation may not be sufficiently specific, may derive more precise ideas from the following account, referring by letters to the different parts of the invention:
 DESCRIPTION OF THE INVENTION.
 A, box or bed into which the elastic material, impressed with the required designs to be grained upon the pails, is placed or framed.
 a, b, c, d, e, f, g. Blocks or staves, each of different designs, into which the elastic bed may be arranged, so that the pail or vessel grained shall present the appearance of being constructed of different kinds of woods, as rosewood, oak, walnut, and others; this in case only, however, that the manufacturer does not prefer one continuous design.
 C, E, and F, the handles and other devices for affixing or attaching the handles C and F to the pails, to facilitate the operation of graining.
 E E, a circular plate divided in two parts, to each of which is rigidly attached the handles F F.
 The handles F F are connected by a hinge at h, and between them is arranged a spring s, to throw said handles apart when not confined by the ring r upon the ends of the same.
 MODE OF OPERATION AND APPLICATION.
 The ring r being removed from the end of the handle F F, the opposite ends thereof approach each other, being forced together by the operation of the spring § and hinge h; and thus the two parts of the plate E E are drawn together, diminishing its size, so that it can be introduced within the chime of the bottom of the pail, when by pressing the ends of F F together and replacing the ring r, the plate E E is expanded and adjusted within said chime so as firmly to fasten the handle F to the pail. The handle C is then inserted and adjusted within the pail, when the operator grasps the handles C F, and adjusts the pail upon the elastic bed, as shown; the paint or coloring matter having been previously applied thereto by means of a roller, or in any other suitable and convenient manner. The pail is then readily rolled across the bed and grained.
 
 
 **
 15 Howard, 268.