TUBULAR RIVET & STUD CO. v. STANDARD FINDING CO., Inc.

(Circuit Court of Appeals, First Circuit.   February 29, 1916.)

No. 1153.

PATENTS ⚫═══328—VALIDITY—DESIGNS—INVENTION.
   The Bray design patent, No. 39,201, for a design for a lacing hook, differing from the prior art only in that it is oval in shape, *held* void for lack of invention.

Appeal from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Suit in equity by the Tubular Rivet & Stud Company against the Standard Finding Company, Inc. Decree .for defendant, and complainant appeals. Affirmed.

The following is the opinion of Dodge, Circuit Judge, on pleadings and proofs:

This bill charges the defendant company with infringing design patent No. 39,201, issued March 17, 1908, to Mellen N. Bray, for "a new, original and ornamental design 'for lacing hooks." Bray assigned the patent to the plaintiff company March 21, 1908, which now owns it. The plaintiff has made and sold lacing hooks claimed to be 'in accordance with the patent since 1905, Bray's application having been filed August 10, 1904. The plaintiff's sale of such hooks has been considerable and has increased year by year. It has sold them under the name of "Ovaloid," and they have come to be known by that name in the trade. They have largely superseded hooks of other shapes in the market.

It is stipulated that the defendant company have made and sold lacing hooks of a form represented by Exhibit A annexed to the stipulation, in

Massachusetts, and within six years before this bill was filed on January 15, 1915; said hooks being imported from Germany.

The defendant denies the validity of the patent, and also relying upon the limitation of the patented design which it asserts, denies infringement even if the patent be valid.

(1) The patentee's specification is extremely brief, as follows: "Figures 1 and 2 of the drawing are a perspective view and plan view respectively of a lacing hook embodying my design." The claim is: "The ornamental design for a lacing hook as shown."

From Fig. 1 it appears that there is nothing new, original or ornamental about the lower rivet or portion of the lacing hook shown, whereby it is held in position on the shoe. It is in the upper or hook portion, extending upwardly from the upper edge of the rivet and then bent over to form the hook under which the lacing is to be clasped, that the alleged novelty, originality and ornamental character of the design resides, if anywhere. In Fig. 2, the plan view, the upper surface of this hook only is shown, viewed from above. As there shown, the surface is a regular oval in outline.

The patent has no drawing disclosing the outline of the hook as it would appear in vertical section. There are a few shading marks both in the "perspective view" and in the "plan view"; but these are not enough to indicate clearly that any portion of the upper surface of the hook, or how much, if any, is intended to be left flat. Specimens of these "Ovaloid" hooks, introduced by the plaintiff (Plaintiff's Exhibit 2), show no portion of their upper surfaces distinctly flat, and the evidence shows that the plaintiff has never made hooks having such distinctly flat portion. The defendant's hooks (Exhibit A) have none. The defendant contends that, although not clearly shown by the drawings, such flat portion is an essential part of the patented design. This contention perhaps find some support in the Patent Office proceedings on Bray's application. The drawing first submitted was like the present Fig. 1, except that he filled in the entire outline of the head with a uniform black, thereby conveying even less definite information on the point than is found in Fig. 1. The amendment he first offered stated that, "as shown in this drawing, the lacing hook is provided with a flat oval-shaped head, the upper edges of the head being rounded," and the accompanying letter, dated August 19, 1905, stated, in an attempt to distinguish the design from prior lacing hooks cited against it, that "the head presents a flat symmetrical appearance." These statements were, however, withdrawn or abandoned in the subsequent proceedings, wherein nothing more is said about the head being flat.

It does not seem to me that there is enough in all this to limit the patentee to a head having part of its upper surface distinctly flat. The plaintiff says that "the important point as contrasted with the prior art is * * * the oval shape, with corresponding curvatures at the front and rear of the head," and for the purposes of the question of validity this construction of the design will be adopted.

The evidence shows that lacing hooks in use before the plaintiff introduced its "Ovaloid" hooks differed in design from the latter only in the fact that their outline, supposing it shown in a "plan view" like Fig. 2 of the patent, was not an oval. The plaintiff itself had previously been making hooks whose outline, shown as above, would have been round; and this seems to have been the shape generally used. The plaintiff had also been making what is called "Agatine" hooks, which, instead of being round, were oval except that the oval was incomplete at one end; where the outline had an inward curve across the longer axis of the oval, instead of completing the oval at that end to correspond with the other end.

That there had been any adoption of the plaintiff's oval shape as above for lacing hooks prior to the application for the patent does not seem to me sufficiently proved. The defendant has introduced a number of prior patents for improvements in lacing hooks, but none of them are design patents; all, therefore, relate to utility and not to appearance; none, therefore, could amount to an anticipation of the patent; nor do I find sufficient indications in any of them that the adoption of an oval shape was contemplated by the patentee. The defendant relies principally on No. 419,982, issued January 21,

1890, to F. R. Welton, for "improvements in lacing hooks and method of making the same," and undertakes to show by a drawing said to correspond accurately with the representation of the "Welton" hook in the drawings of his patent that it would have an oval outline substantially as shown by the drawings of the design patent. Welton's specification states that his object is to produce a hook from a sheet-metal shell having double walls throughout, "the shape of said hook being substantially the same as that of the hooks now generally in use," etc. It is not clear to me from Welton's drawings that he had an oval as distinguished from a round shape in mind, or that his hook must necessarily have been of the oval shape. Whether or not any lacing hooks made under his patent were ever made, sold or used, does not appear. Patent No. 303,601, issued August 12, 1884, to Victoria A. Burr, for an improvement in glove fasteners, has drawings representing the wrist of a glove "with the fastening now in use." The metallic hooks therein represented are distinctly oval in outline, but neither this patent nor Welton's can be regarded as sufficient proof that lacing hooks like those here in question, of the oval shape, were known and used at their respective dates, and there is no other proof to that effect.

Besides superseding hooks of the shapes previously prevailing, there is evidence that the "Ovaloid" hooks have held the market against attempts to introduce hooks of still other shapes subsequently contrived in competition with them; such as squares with beveled corners or octagons. Customers have continued to "prefer the looks" of the "Ovaloids." If in view of this evidence the patented design may be called "ornamental" within the meaning of Rev. St. § 4929, as amended in 1902 (32 Stats. 193, c. 783 [Comp. St. 1913, § 9475]), the question still remains whether it can be called "new and original" in the statutory sense. It is not contended that lacing hooks, affecting as they do the appearance of articles of personal wear, are things incapable of being made the subject of a design patent. See Foster, etc., Co. v. Tilden-Thurber Co., 200 Fed. 54, 56, 118 C. C. A. 282. The oval shape is, of course, too simple and familiar a modification of the circular shape to permit anybody now to claim that it is "new and original" with him, considered by itself. It can be called "new and original" with Bray, at the utmost, only in the sense that no one had applied it to lacing hooks before him. With regard to design patents, the Supreme Court has said in Smith v. Whitman, etc., Co., 148 U. S. 674, 679, 13 Sup. Ct. 768, 770 (37 L. Ed. 606):

"The exercise of the inventive or originative faculty is required, and a person cannot be permitted to select an existing form and simply put it to a new use any more than he can be permitted to take a patent for the mere double use of a machine. If, however, the selection and adaptation of an existing form is more than the exercise of the imitative faculty and the result is in effect a new creation, the design may be patentable."

I am, therefore, required to find, in order to sustain the patent, that in adopting the oval shape or outline for a lacing hook instead of the circular shape previously in use, or in adopting a completely oval shape or outline in place of a shape or outline oval only in part (as in the "Agatine" hooks), more than the imitative faculty was exercised, inventive thought was displayed, and the result was in effect a new creation. I am unable to believe that such a finding can justly be made. It certainly cannot be said that there was anything new or original in Bray's plain oval, regarded by itself, as a design. The shape selected was altogether too obvious and too long familiar as applied to other articles of manufacture. The unpatented "Agatine" shape might with much more reason, as it seems to me, have been called "new and original" from this point of view. Bray's resort to the oval shape was therefore only a resort to a resource which was common property and incapable of being monopolized. I find no reason whatever for believing that his adaptation of the oval shape to the head of a lacing hook involved anything beyond the most ordinary mechanical skill, such as had already produced the round and the "Agatine" hooks. A design patent of which all this is true cannot be sustained. In Phœnix Knitting Works v. Hygenic, etc., Co., 194 Fed. 696, 699, 700, 703, 115 C. C. A. 118, the court found no invention sufficient to support a design patent in the adaptation of an old ornamental weaving pattern for a

neck scarf whose configuration differed from any wherein the same pattern had before been used. In Baker, etc., Co. v. N. B. Cass Co., 220 Fed. 918, 136 C. C. A. 484, the court found no invention sufficient to support a design pattern in the adaptation of block letters of old ornamental design to a set of character blocks for children.

The Patent Office proceedings upon Bray's application show that a patent was granted for his design only with extreme reluctance. His application as originally made was rejected, and four other rejections followed as many amendments. Its final allowance appears to have been procured by urging the favor with which the design had met in the trade, and the extent to which it had displaced lacing hooks of earlier shapes. To this commercial success, as shown at the present hearing, reference has already been made. It might well be sufficient under some circumstances to resolve doubt as to the existence of patentable invention in the patentee's favor, but I am unable to regard it as sufficient for that purpose in the present instance. There was similar proof of marked commercial success in the case last above cited. The public fancy may often be caught by something requiring only ordinary skill to devise. The evidence before me indicates, moreover, that the plaintiff company makes and leases machines for setting lacing hooks, that these are adapted to set its "Ovaloid" hooks only, and that these machines have been far superior in productive capacity to those available for setting hooks of the other shapes.

2. The defendant's hooks (Exhibit A) do not differ in shape from the hook shown in the patent, and if the patent, taken as above without the limitation contended for by the defendant, is valid, they undoubtedly infringe. Being unable, however, for the above reasons, to sustain the patent, I must dismiss the bill; and there may be a decree accordingly.

William K. Richardson, of Boston, Mass. (Harrison F. Lyman, of Boston, Mass., on the brief), for appellant.

Abraham K. Cohen, of Boston, Mass., for appellee.

Before PUTNAM and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This case arises under a patent for an ornamental design, issued to Mellen N. Bray, No. 39,201, on March 27, 1908. The patent is very brief, but as far as that is concerned, it is sufficient. It is said to be for a new, original and ornamental design for lacing hooks. The claim is given as follows: "The ornamental design for lacing hooks, as shown." Aside from the drawings showing the lacing hook with an oval head, there is no intimation given of the originality or the ornamental features of the lacing hook.

The learned judge of the District Court before whom the case was tried gave a careful opinion covering the state of the particular art in question, including a description of the lacing hook covered by the plaintiff's design. So far as we can see, the plaintiff's design contained nothing new except a slight change in the shape of the neck of the hook and the substitution of an oval head in the place of the usual circular head, which is so common in men's, women's and children's shoes, and while these ideas have a considerable measure of novelty, we do not think that they involved such a full measure of novelty as to amount to invention. As the result of the investigation by the District Court, the bill was dismissed, with costs, and there can be no possible doubt that the conclusions reached by that court should be affirmed.

The appellant relies particularly on the opinion of this court in Foster v. Tilden-Thurber Co., decided on November 13, 1912, 200 Fed. 54, 118 C. C. A. 282, which was for a design for a clothes brush; but it is possible to see that the patentability of this clothes brush might have been sustained, where the patent now before us should not be accepted, particularly in view of the fact that in the clothes brush case the respondent relied especially upon the general propositions that the configuration of the clothes brush constituted a proper subject for a design patent, and that the patented design was not anticipated. However, there is as much reason for holding that the case decided was improperly decided as there is for making it a precedent for an indefinite number of judgments in favor of other patents. Every patent of this character must depend upon its own merits.

The judgment of the District Court is affirmed, with costs of appeal for the appellee.