GOUDY v. HANSEN.

(Circuit Court of Appeals, First Circuit. November 15, 1917.)

No. 1264.

1. PATENTS ⊛43—PATENTABILITY—DESIGNS.

In a valid design patent, there must be originality and novelty, as well as beauty, the test of which is the impression made on the mind, through the eye, of the ordinary observer.

2. PATENTS ⊛15—DESIGNS—PATENTABLE SUBJECT-MATTER.

A design for a font of type is not patentable subject-matter under the statute.

3. PATENTS ⊛328—VALIDITY—DESIGN FOR FONT OF TYPE.

The Goudy design patent, No. 45,108, for a design for font of type, *held* void, both because the subject-matter is not patentable and because the patent does not show such peculiar configuration or ornamentation in the type as to authorize a design patent.

Brown, District Judge, dissenting.

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Suit in equity by Frederic W. Goudy against Henry Alfred Hansen, executor. Decree dismissing bill on motion, and complainant appeals. Affirmed.

E. W. Bradford, of Washington, D. C., for appellant.

Nathan Heard, of Boston, Mass., for appellee.

Before BINGHAM, Circuit Judge, and BROWN and HALE, District Judges.

HALE, District Judge. The plaintiff was the patentee, and is the owner, of United States patent No. 45,108, for "design for font of type." Under equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi), the defendant files a motion that the bill in equity be dismissed, for the reason that the patent on its face is invalid, because the disclosure thereof does not constitute patentable subject-matter, and because no such configuration or ornamentation is shown as would authorize a design patent. He alleges five other causes for dismissal.

The motion brings before us the patent itself. In it the patentee alleges that he has invented a certain new, original, and ornamental design for a font of type; that the drawing shows the face and form of each letter and character. He claims the ornamental design for a font of type, as disclosed in the drawing. That disclosure shows the 26 letters of the alphabet, and the 10 Arabic numerals, as follows:

# A B C D E F G H I J K L M N O P

# Q R S T U V W X Y Z

# 1 2 3 4 5 6 7 8 9 0

[1] The amendment of May 9, 1902, to section 4929 of the Revised Statutes of the United States (Comp. St. 1916, § 9475), provides that any person who has invented any new, original, and ornamental design for an article of manufacture may, subject to certain conditions and limitations stated in the statute, obtain a patent therefor. The original section 4929 provided that any person who, by his own industry, genius, efforts, and expense, had invented and produced any new and original design, etc., should, under certain limitations, be protected. The amended section differs from the original section in using the word "ornamental" to specify and characterize the features which every design must have, and in omitting the word "useful" from its enumeration. But the presence of usefulness did not impart patentability to a design, and the absence of usefulness did not take patentability from it. All statutes and regulations which apply to the protection of inventions and discoveries apply to designs. Revised Statutes, § 4933 (Comp. St. 1916, § 9481). In a patent for mechanical devices there must be novelty and utility. In a design patent there must be originality and novelty, as well as beauty. The same principles of

construction apply both to design patents and to mechanical or process patents. There must, therefore, be invention in a design patent, as well as in a mechanical patent. These principles are old, and have been often declared by the courts. Smith v. Whitman Saddle Company, 148 U. S. 674, 13 Sup. Ct. 768, 37 L. Ed. 606; Gorham Manufacturing Co. v. White, 14 Wall. 511, 524, 20 L. Ed. 731; Tubular Rivet & Stud Co. v. Standard Finding Co., 231 Fed. 170, 172, 145 C. C. A. 358; Cahoone v. Rubber Company (C. C.) 45 Fed. 582; Northrup v. Adams, Fed. Cas. No. 10,328; Walker on Patents (4th Ed.) §§ 20, 22. In American Type Founders' Company v. Damon & Peets (C. C.) 140 Fed. 715, suit was brought upon a design patent for a font of type. Judge Holt, of the District Court of the Second Circuit, held that the patent was void, because it showed no patentable invention, and no such peculiar configuration or ornamentation in the type as would authorize a design patent.

In Charles Boldt Co. v. Turner Bros., 199 Fed. 139, 117 C. C. A. 621, in the Seventh Circuit, it was held that whether or not the device of a design patent meets the requirements of the statutes is a question to be determined from the impression it makes on the mind, through the eye of the court, or of the ordinary observer, and not upon the expert; that the provision of the Constitution was not intended to grant a monopoly merely for the purpose of stimulating manufacturers to make goods look attractive without requiring that the conception shall display a degree of originality and beauty which presupposes inventive thought. In speaking for the court for the Seventh Circuit, Judge Kohlsaat observed:

"Indeed, a glance at the decisions which have sustained design patents seems to suggest that there may be often more inventive genius displayed by the court in finding invention in design patents than the inventor disclosed in placing it there."

In Keystone Type Foundry v. Portland Publishing Co. (C. C.) 180 Fed. 301, the manufacturers of a peculiar kind of type attempted to restrain a publishing company from producing type of the same character. Invoking the law relating to unlawful competition, they sought to monopolize "the style of typography produced by the type." In the case at bar the plaintiffs are seeking the same end. We agree with the learned judge, who gave the judgment of the District Court, that design patents contemplated by the statute were never intended to serve such purpose.

In this patent the characters and imprints brought before the court appear to have no common characteristics running through the series. The types themselves, from which the imprints are taken, are not illustrated or described in the patent. The imprints are of the letters of the alphabet and the Arabic numerals. These letters and numerals have been known to the world for many generations of men.

The things attempted to be patented in this case are the metal blocks, with the letters and figures cut thereon. These blocks, either with or without the letters, are not things of beauty; they are no more patentable than the horseshoe calk. Williams Calk Co. v. Kemmerer, 145 Fed. 928, 76 C. C. A. 466. They appear to us not to present

any feature of design running through them, and appealing to the eye of the observer or of the court. They do not present sufficient novelty or beauty to constitute a design patent. They cannot be held to be the result of invention or the product of genius.

The test of patentability must be the eye of the court, or of the observer, and not the eye of some skilled engraver of type. To apply this test the court may, of course, receive expert testimony. Whether such testimony is introduced or not, the court must put itself, so far as possible, in the place of the ordinary purchaser of type; and such purchaser would be likely to have some knowledge of the goods with which he deals, although not necessarily an expert knowledge. Gorham Manufacturing Co. v. White, 14 Wall. 511, 528, 20 L. Ed. 731; Phœnix Knitting Works v. Bradley, etc., Co. (C. C.) 181 Fed. 163, 164.

[2, 3] We are constrained to sustain the objections raised by the motion that the patent is invalid, because the disclosure in it does not constitute subject-matter patentable under the patent law, and because it shows no such peculiar configuration or ornamentation in the type as would authorize a design patent.

Having come to this conclusion, it is unnecessary to consider the further objections raised by the motion.

BINGHAM, Circuit Judge (concurring). I agree with the conclusion reached by Judge HALE for the reason that a design for a font of type is not patentable subject-matter under the statutes of the United States. What the plaintiff has sought to procure a patent for is not the design when impressed by the types upon paper, but for the design as embodied in the letters and numerals and applied to the metal blocks constituting the font of type; and the question is whether the design, as thus applied, is the subject-matter of a design patent within the meaning of the statutes.

It is apparent that the design as applied to the metal blocks presents no beauty to the eye; it is only when, by the process of printing, the letters and numerals are transferred to paper, that any beauty is disclosed; but the design thus impressed upon paper is not the subject-matter which the plaintiff has claimed and procured a patent for.

In Clark v. Bousfield, 10 Wall. 133, 140, 19 L. Ed. 862, decided by the Supreme Court in 1869, this question was considered in construing a claim for an alleged design under section 11 of the act of March 2, 1861 (12 Stat. 248, c. 88), which statute, so far as the question under consideration is concerned, did not differ from section 4929 of the Revised Statutes, as amended by the Act of Congress of May 9, 1902. In that case the plaintiff had devised a machine with an elastic bed, embodying a design by which the design could be impressed upon the staves of a pail by revolving the pail over the elastic bed, and the question was whether the second claim of the patent was simply for a design, or was for a part of the mechanical device, and, if for the former, whether it was void. It was held, first, that the design was but incidental to the machine, and had no protection other than that which the patent secured to the inventor of the machine; and, second, that the claim as for a design patent, under section 11 of the act, was invalid. The court said:

247 F.—50

"The arranged figure in the elastic bed is not the one protected by the eleventh section of the act of 1861; that is the one which is transferred to the pail or wares, where its beauty is first visible to the eye. While it remains in the elastic material, it exhibits no more beauty than, if engraved on stone or metal."

The font of type here under consideration is nothing more than the elastic bed in Clark v. Bousfield. The design there, as applied to the elastic bed, was not a thing of beauty, and patentable under section 11 of the act of 1861, and no more is the design here, as applied to the metal blocks or font of type, a thing of beauty. It is the design as applied to an article of manufacture, and lending beauty thereto, that is patentable, not the design in the abstract and without reference to an article of manufacture. If the article to which it is applied is of such a character that the design would not render it pleasing to the eye, which is the case here, it is not the subject-matter of a design patent. Gorham Co. v. White, 14 Wall. 511, 525, 20 L. Ed. 731; Foster & Bro. Co. v. Tilden-Thurber Co., 200 Fed. 54, 56, 118 C. C. A. 282, and cases there cited; Rowe v. Blodgett & Clapp Co., 112 Fed. 61, 50 C. C. A. 120.

The decree of the District Court, dismissing the bill, is affirmed. The appellee recovers costs in this court.

BROWN, District Judge (dissenting). I am of the opinion that the motion to dismiss the bill on points arising on the face of the bill should have been denied, and that the plaintiff was entitled to a full hearing in usual course.

The case presents two important questions:

(1) Whether a court, upon mere inspection of this design, should undertake to pass judgment on its artistic merit and patentable novelty.

(2) Whether the practice of the Patent Office in issuing design patents for "fonts of type" should be condemned.

As to the merit of the design—the motion to dismiss requires consideration, not only of the patent itself, but of the allegations of the bill that the defendant has copied this design, has made fonts of type reproducing the design, and has sold a large quantity of said type, and derived large profits therefrom.

It thus appears that this patented design has at least such a degree of merit as to induce the defendant to adopt it as a pattern for the manufacture of his type, rather than any of the thousands of unpatented designs which are free to the copyist. If, also, it be a fact that purchasers of type for use in printing have preferred type of this design —if it has won in competition with other designs by reason of differences important enough to influence the choice of both type founders and printers—I am of the opinion that any doubt in the minds of judges as to its artistic quality should be resolved in favor of the patent. Type founders and printers are the purchasing observers of the designs for fonts of type, and their practical conduct in choosing this design affords a better test of its quality and merit than the opinion of judges, who cannot be regarded as "ordinary observers" in the arts of type founding or of printing. The fact that the design has been infringed is sufficient to establish its utility as a design, and to

indicate its possession of qualities which appeal to the classes of persons who are engaged in the manufacture or purchase of type, and who thus are the ordinary observers of this class of designs.

The contention by an infringer that the device which he infringes constituted no advance in the art is not received with favor. Lehnbeuter v. Holthaus, 105 U. S. 94, 96, 97, 26 L. Ed. 939; Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 604, 616, 32 Sup. Ct. 691, 56 L. Ed. 1222; Aurora Mantle & Lamp Co. v. Kaufmann, 243 Fed. 911, 914, —— C. C. A. ——.

The question of novelty of design should properly be raised by answer and settled by proofs. New York Belting & Packing Co. v. N. J. Rubber Co., 137 U. S. 445, 450, 11 Sup. Ct. 193, 34 L. Ed. 741; Bleistein v. Donaldson Lith. Co., 188 U. S. 239, 253, 23 Sup. Ct. 298, 47 L. Ed. 460.

Gorham Mfg. Co. v. White, 14 Wall. 511, 20 L. Ed. 731, is an authority only on the question of infringement, and for the familiar rule that differences which do not destroy the substantial identity of the general appearance to the ordinary purchaser do not avoid infringement. It cannot be properly applied as establishing a rule for determining "identity of design" in point of artistic invention. The scope of Gorham v. White is considered in Robinson on Patents, § 203, note 1, and Renwick on Patentable Invention, § 76, p. 106.

Typography is well within the fine arts, and by reference to Webster's latest International Dictionary, under title "Typography," it will be seen that each font of type has letters of similar characteristics, so that an entire font of type may be illustrated by a single word containing only a few letters of the font. The letters have both the font's characteristics and their own.

Should the practice of the Patent Office in issuing design patents for "a font of type" be condemned?

The presumption is in favor of a practice of considerable duration. It seems to me practical, sensible, and sound. At least it should not be overturned, except upon a full hearing, in which the court should have before it information as to the rulings of the Patent Office and of the courts as to design patents for a large number of articles of manufacture to which a design is applied, and which perform also the function of reproducing the design. These seem to form a distinct class of articles of manufacture whose value is due principally to the artistic character of the design that they embody, rather than to the fact that they are also mechanical means of reproduction of design. Matrices, dies for making coins, medals, and like articles, seals, stamps, stencils, molds, jewelers' rolls, and various products of the die sinker, are examples.

Manufacturers of such articles employ designers, whose artistic work is complete when they have finished a drawing or a model. In many large factories of jewelry, silverware, etc., the designing department, with its stock of designs, is practically distinct from the manufacturing department.

It seems to me that the designer's right to a design patent is complete when he has produced a drawing or model which is a complete

guide to the artificer of the article of manufacture; and, though design relates to appearance, appearance to the eye of the copying artificer satisfies the requirements of the act, even though the artificer applies the design to a die, or a type face, not intended for direct observation on account of its beauty, but for reproduction.

In a case tried before me, Byers v. F. T. Pearce Co. (D. C.) 228 Fed. 720, it appeared in evidence that stock ornaments for jewelers' use were manufactured from dies, and that the maker of the dies sold both the blanks struck from the die and the dies themselves; two different "articles of manufacture," but with the same design for each. There was but one design; but it was both for the stock ornament and for the die which was used to strike up the ornament from metal. The stock ornament was capable of application to many different articles. This is typical of a large class of manufacturers in this circuit.

"But it is the design that is patented, not the mechanism dressed in the design." R. E. Dietz Co. v. Burr & Starkweather Co., 243 Fed. 592, 594, —— C. C. A. ——.

As it is the embodiment of the design which gives such "articles of manufacture" and such marketable products their principal value, is there any sufficient reason for denying to the designer the right to patent his design "for an article of manufacture" of this class? Or must he claim his design for the article of manufacture which is the product of the die or similar instrument of reproduction of the design?

It is said that it is the design as applied to an article of manufacture, and lending beauty thereto, that is patentable, and that, if the article to which it is applied is of such a character that the design would not render it pleasing to the eye it is not the subject-matter of a design patent.

This is a very clear statement of the opposite view. The decision in Clark v. Bousfield, 10 Wall. 133, 140, 19 L. Ed. 862, does not seem to be conclusive, however, upon this question; for the right of an original inventor of a patented design to exclude its use upon mechanism for its reproduction, and that the patentable design is a thing apart from the instrument for reproducing it, seem to be recognized in that decision:

"The patent is simply for the design, etc., itself."

"It may be that the inventors of the machine for impressing figures or designs upon pails or other wares would not be protected from using figures or designs, the right of property in which had been secured to the original inventor under this eleventh section, but they may clearly use any and all not thus protected. The machine in question is invented for reducing to practical use these figures and designs, and will make them profitable to the original inventors or owners of them, if they choose to employ it."

The case gives no consideration to the question whether a patented design, so completely illustrated by a drawing that the copyist has only to follow it in order to make an instrument for its reproduction, is rendered invalid because the inventor has chosen to claim it "for an article of manufacture," which is not intended to exhibit it, but can reproduce it, rather than for an article which is to be looked at directly.

Having in mind the practical division between the work of designing and the work of manufacturing according to the design, and also the very important consideration that it is the appearance of the patented design which is to furnish to the manufacturer full direction as to the shape or configuration of his article of manufacture, it is quite obvious that the type founder who selects this patented design is led to do so by its appearance and artistic quality as exhibited in the patent drawing. He has received such full instruction as to enable him to manufacture an article which owes its chief value to what the patentee has exhibited to his eyes, and what he in turn exhibits to the eyes of his workmen as a guide to reproducing it in metal upon an instrument which may again reproduce it.

The designer makes his design for the use of a manufacturer of type, who pays for it as a design. Whether he makes it up into type or not is immaterial. He has the sole right to make use of that design as a guide to his manufacture of type; and if another manufacturer follows that design as exhibited in the patent, he infringes as much as if he had copied it from the face of manufactured type.

It seems to me erroneous to hold that, because a manufactured font of type is not ordinarily regarded as in itself possessing beauty, the design which was exhibited to the eye of the manufacturer, and which he chose as a pattern to exhibit to the eyes of his workmen as a guide in their work, and which he also exhibits to purchasers of type, to induce them to select his type in preference to other type, should be held unpatentable, because the article in which the design is physically embodied is not looked at to see the design which was the pattern for its construction, and which it may at any time reproduce.

If we regard the design as a thing apart from the type, as the completed work of the designer, as a thing which the type founder sees and selects, which the workman sees and follows, which the printer chooses in order to please those who like good printing, and which the infringer copies, though he may never have seen the face of his competitor's type, there should be no difficulty in concluding that the design patent relates to that appearance which is the contribution to the public which the law decrees worthy of recompense.